# Richmond

WALTER LEON WESTCOTT v. COMMONWEALTH OF VIRGINIA.

June 13, 1975.

Record No. 740868.

Present, All the Justices.

*William P. Robinson, Jr.* (*Mason, Moore & Robinson, Ltd.,* on brief), for plaintiff in error.

*James E. Kulp, Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Poff, J., delivered the opinion of the court.

Sitting without a jury, the trial court found Walter Westcott guilty of grand larceny by receiving stolen goods and sentenced him to three years in the penitentiary.

On October 21, 1973, a portable telephone and a pair of Leitz binoculars, valued at $3,251.04 and $424.69, respectively, and certain other articles were stolen from Dr. Joseph McFadden's parked car.

About 8:00 a.m. on January 10, 1974, H. W. Scott, an officer attached to the Narcotics Squad of the Norfolk Police Department, received a telephone tip from a reliable informant that Westcott, whom Scott knew, would go to a certain motel that afternoon and pick up a quantity of drugs. At 10:30 a.m., Scott set up surveillance from another motel directly across the street. Around noon, Westcot arrived in one of the cars he was known to drive. After visiting the motel office, he went to one of the rooms fronting on the street, knocked on the door, stuck his head inside, and returned to the office where he remained for approximately five minutes. He returned to the room, a woman came out, and the couple entered Westcott's car. Westcott was carrying nothing visible to the officers, and he never opened the trunk of his car. As Scott approached Interstate Route 64 in pursuit of Westcott, he made a wrong turn and lost sight of Westcott's car for a period of time. Alerted by radio, officers in another car stopped Westcott at an interchange some two miles away. When Scott arrived, the officers conducted a warrantless search of Westcott's person, the passenger compartment of his car, and the car's trunk. No narcotics were discovered, but inside the trunk the officers found three handguns, a portable telephone, and a pair of Leitz binoculars. They seized the guns and the telephone but left the binoculars in the trunk. Westcott was taken into custody "under investigation for a felony, for narcotics", interrogated, and released without charge.

Later, after other officers recognized the telephone to be similar to one reported stolen from Dr. McFadden's car, Westcott was arrested and charged with grand larceny. Some two days later, at the officer's request, Westcott went to the repair shop where he had left his car, retrieved the binoculars from the trunk, and delivered them to the police station.

The defendant moved to suppress the physical evidence on the grounds that the warrantless search violated the Fourth Amendment guarantee against unreasonable searches and seizures. The trial court overruled the motion and admitted the binoculars and telephone into evidence. By comparing the serial numbers on the binoculars with those on his purchase receipt, Dr. McFadden identified the binoculars

as those stolen from his car. Asked to identify the telephone, which contained no serial numbers, he said, "I cannot identify that piece of equipment specifically as the one which was in my car, because there's so many that are identical from appearance." Over the defendant's objection, the trial court admitted Scott's hearsay testimony that a technician at the telephone company had examined the telephone in his presence and had found it to be wired for the call number registered to Dr. McFadden.

Westcott testified that he had purchased the telephone in a pool parlor from a man named "Pretty Willie" for $25.00 and the binoculars from a Washington, D. C., resident, whose name he could not recall, for $8.00. He denied having any reason to know that the articles had been stolen.

■ One of the recognized exceptions to the warrant requirement of the Fourth Amendment is that police officers may stop and search a moving vehicle if they have probable cause to believe that it contains seizable objects. *Almeida-Sanchez* v. *United States,* 413 U.S. 266 (1973); *Chambers* v. *Maroney,* 399 U.S. 42, *reh. denied,* 400 U.S. 856 (1970); *Schaum* v. *Commonwealth,* 215 Va. 498, 211 S.E.2d 73 (1975). The defendant conceded in oral argument that Scott had such probable cause and thus abandoned his challenge to the reliability of the informant. Since Scott could not anticipate which of several cars Westcott might be driving, and therefore, could not make an affidavit "particularly describing the place to be searched", it was impossible for him to obtain a search warrant in advance of the stop. *See Vass* v. *Commonwealth,* 214 Va. 740, 743, 204 S.E.2d 280, 283 (1974).

However, relying upon the rule in *Chimel* v. *California,* 395 U.S. 752 (1969), the defendant contends that Scott's authority to search was limited to the specific area under his control and that this did not include the trunk compartment of his car. The defendant misapplies the *Chimel* rule. A search incident to lawful arrest, another of the recognized exceptions to the warrant requirement, had its genesis in *Weeks* v. *United States,* 232 U.S. 383, 392 (1914) *(dicta)*; and *Agnello* v. *United States,* 269 U.S. 20, 24 (1925) *(dicta). Chimel* fixed the outer constitutional limits of such a search as "the area into which an arrestee might reach in order to grab a weapon or evidentiary items". 395 U.S. at 763. That rule, applicable where the predicate for the warrantless search is a lawful arrest, has no relevance where the predicate for the warrantless search is probable

cause to believe that a car contains contraband or other seizable objects.[1]

The defendant argues that, since "there was no reason or justification, based upon the information received, to justify a search of the defendant's trunk", the officers did not have probable cause to search the trunk.

The probable cause standard does not require actual knowledge. ". . . [O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. . . ." *Spinelli* v. *United States,* 393 U.S. 410, 419 (1969). Here, the officers were told by a reliable informant that the defendant would pick up a quantity of drugs. This information, coupled with the officer's observations, gave them probable cause to believe that the narcotics would be transported in the car defendant was driving. Given such probable cause, the officer's right to stop and conduct a warrantless search of a moving vehicle extends to the entire car, including the passenger compartment, the glove compartment, the motor compartment, the trunk compartment, and closed containers within the car. *See Schaum* v. *Commonwealth, supra* (search of locked trunk); *U. S. v. Tramunti,* 513 F.2d 1087, 16 Crim. L. Rptr. 2543, 2544 (2d Cir. 1975) (search of suitcase in car); *U.S. v. Bush,* 500 F.2d 19, 21 (6th Cir. 1974) (Per Curiam) (search of glove compartment); *U. S. v. Soriano,* 497 F.2d 147, 149 (5th Cir. 1974) (search of suitcases in trunk). *See generally, U. S. v. Anderson,* 500 F.2d 1311, 1315, *reh. denied,* 504 F.2d 760 (5th Cir. 1974); *People* v. *Ehn,* 320 N.E.2d 536, 545 (Ill. App. 1974).

Considering the characteristics of the objects sought, we find that the search encompassed only those areas in which it was reasonable to believe that they could be located,[2] and we hold that there was no error in the trial court's ruling that the warrantless search was lawful.

We need not consider the defendant's contention that, for want of proper identification, the telephone was incompetent evidence. At

---

[1] Because that is the predicate for the warrantless search here, it is immaterial whether Westcott's warrantless "arrest" (or investigative detention) was lawful.

[2] It was not unreasonable for the officers to believe that a person transporting narcotics in an automobile would conceal them in the trunk or some other compartment. They knew that, after receiving the tip, more than two hours had elapsed before the surveillance was established. Asked whether he had "reason to believe that there were narcotics in the trunk", Scott replied, "The informant said he was going to pick them up, sir, but he could have had them in the car when he went there." Moreover, Westcott could have stopped and transferred contraband to the trunk during the interval his car was lost to Scott's view.

the time the officers asked the defendant to surrender the binoculars, they had probable cause to believe that they were part of the fruits of the crime committed against Dr. McFadden. At trial, they were positively identified as such, and their value was fixed at a sum in excess of $100.00. Accordingly, apart from the telephone, the binoculars were sufficient evidence of the crime of grand larceny by receiving stolen goods.

■ In his notice of appeal and assignments of error, the defendant challenged admissibility of the binoculars on the ground that they were the product of an unlawful *search*. Although he argued in the court below that, since the officers did not originally recognize the telephone as a seizable object, its seizure was unlawful, he failed to assign error to the admission of the binoculars on the ground that they were "tainted" by *seizure* of the telephone. "Only errors assigned in the notice of appeal and assignments or error will be noticed by this Court and error not so assigned will not be admitted as a ground of a reversal of a decision below." Rule 5:7.

■ We find no merit in the defendant's argument that the evidence was insufficient to support his conviction because it failed to exclude a reasonable hypothesis of innocence. The trial judge was not obliged to accept what he found to be an "absolutely incredible" explanation of the defendant's acquisition of the property. When the defendant's hypothesis of innocence is unreasonable, evidence of possession of recently stolen goods is sufficient to support a conviction for the crime of larceny, *see Henderson* v. *Commonwealth*, 215 Va. 811, 213 S.E.2d 782 (1975), or the crime of larceny by receiving stolen goods.

We have carefully considered all assignments of error and have found no reversible error. The judgment is

*Affirmed.*