# William Walker Roberts

## v.

# Commonwealth of Virginia

November 27, 1985

Record No. 841128

Present: All the Justices

*Royston Jester, III (Jester and Jester*, on brief), for appellant.
*Eugene Murphy, Assistant Attorney General (William G. Broaddus, Attorney General*, on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

Indicted for grand larceny, the defendant, William Walker Roberts, was convicted by a jury of the lesser-included offense of receiving stolen property.[1] In accordance with the jury's verdict, the trial court sentenced the defendant to serve twenty years in the state penitentiary. We granted the defendant an appeal limited to assignments of error alleging that the trial court erred:

I. In failing to require the Commonwealth's Attorney, in response to a motion filed pursuant to Code § 18.2-111, to designate in writing the statute upon which the Commonwealth intended to rely in seeking a conviction.

II. In permitting the Commonwealth's Attorney to use the transcript of a preliminary hearing as a basis for cross-examining a prosecution witness.

III. In refusing to strike the evidence.

---

[1] The defendant was also indicted and tried for statutory burglary, but the jury acquitted him of that charge.

According to the record, in August, 1983, James and Barbara Humphreys returned from vacation to find that their home in Amherst County near Lynchburg had been burglarized and that some 58 separate items of property were missing. On September 21, 1983, police officers armed with a search warrant went to the home of the defendant, a retired minister. The affidavit supporting the search warrant alleged that one Keith William Hubbard had committed a series of burglaries in the Lynchburg area and had sold the defendant the property stolen in the burglaries.

In a search of the defendant's home, the police seized numerous items of property later identified as having been stolen. Included were 7 of the 58 items stolen in the burglary of the Humphreys' home.

## I.

Four days before trial, the defendant filed a written motion asking the trial court to order the Commonwealth's Attorney to furnish a statement in writing, as required by Code § 18.2-111, designating the statute upon which the Commonwealth intended to rely in the defendant's prosecution. The Commonwealth's Attorney did not respond, and, on the morning of trial, defense counsel called the trial court's attention to the pending motion.

When the court asked the Commonwealth's Attorney to state his position on the matter, he replied: "We don't mind advising [defense counsel], as we have throughout, we're proceeding under the general statute . . . with respect to grand larceny which brings in the lesser included offense of receiving stolen property."[2] The trial court then held it would "accept [the prosecution's] election as complying with the law."

Code § 18.2-111 relates to the offense of embezzlement and provides that any person who commits certain enumerated acts "shall be deemed guilty of larceny [and] may be indicted as for larceny, and proof of embezzlement under this section shall be sufficient to sustain the charge." The Code section also contains this language:

---

[2] The "general statute" the Commonwealth's Attorney referred to is Code § 18.2-95, relating to grand larceny. This section was cited in the defendant's grand larceny indictment.

On the trial of every indictment for larceny, however, the defendant, if he demands it, shall be entitled to a statement in writing from the attorney for the Commonwealth designating the statute he intends to rely upon to ask for conviction. Such statement shall be furnished to the defendant, or his attorney, no later than five days prior to the date fixed for trial on the indictment provided the demand is made more than five days prior to such date.

■ In the trial court, the defendant argued that he needed the § 18.2-111 statement so he would know "what [the Commonwealth's Attorney] intends to do with reference to . . . receiving stolen goods." On brief in this Court, the defendant refines his argument, saying the trial court should have "required the Commonwealth's Attorney to state in writing the [Code] Section dealing with stolen goods."[3]

In oral argument, however, the defendant conceded that an accused may be convicted of receiving stolen property as a lesser-included offense under an indictment charging grand larceny. While the defendant could have been indicted for receiving stolen property under Code § 18.2-108, nothing required that he be so indicted, and he was told all he needed to know when the Commonwealth's Attorney stated the prosecution was relying upon the "general statute" applicable to grand larceny. As the prosecutor explained, the "general statute . . . brings in the lesser included offense of receiving stolen property."

The defendant also concedes that because he did not file his motion more than five days before trial, he was not entitled to receive the § 18.2-111 statement until the day of trial. He insists, however, that he was entitled to receive the statement in writing.

■ We have held expressly that when a motion is made under Code § 18.2-111, but not within the time prescribed by the statute, a designation made orally in open court is sufficient and, in the absence of a showing of prejudice, does not result in reversible error. *Henderson* v. *Commonwealth*, 215 Va. 811, 814-15, 213 S.E.2d 782, 784-85 (1975). No prejudice has been shown here;

---

[3] Code § 18.2-108 is the statute dealing with stolen goods. It reads: "If any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted."

therefore, we reject the defendant's arguments with respect to Code § 18.2-111.[4]

## II.

During trial, Keith William Hubbard, who already had been convicted and sentenced for "these break-ins," was called as a witness by the Commonwealth. At first, Hubbard refused to testify. After the trial court admonished him and ordered him held for trial on a charge of contempt, he began to testify, but in an evasive manner. The trial court then declared it would call Hubbard "as a court witness and let both sides cross-examine [him]."[5]

When Hubbard continued to testify in an evasive manner, the Commonwealth's Attorney asked him whether he remembered testifying at the preliminary hearing of the case. Receiving an affirmative reply, the prosecutor read from a transcript of the preliminary hearing and called Hubbard's attention to several statements that were inconsistent with his testimony at trial. The Commonwealth's Attorney then asked Hubbard whether he had made the earlier statements. Hubbard admitted making some of the statements and denied making others, but his usual reply was, "I don't remember."

The defendant contends it was error for the trial court to permit this use of the preliminary hearing transcript. He says the Commonwealth did not establish, as it was required to do, that the transcript was accurate, that the "original witness" was unavailable, that the witness testified under oath at the former trial, that the issues were substantially the same at both trials, and that the party against whom the testimony was offered was a party at the former trial.

---

[4] The defendant makes the further argument that had the trial court required the Commonwealth's Attorney to state the prosecution was relying upon Code § 18.2-108, rather than the "general statute" relating to grand larceny, the defense would have been able to keep from the jury a list of the property stolen from the Humphreys' dwelling, which list contained items not found in the search of the defendant's home. This is the first time, however, any point has been made concerning the list. Indeed, when the list was offered into evidence at the conclusion of Mrs. Humphreys' testimony, defense counsel stated he had no objection. Accordingly, we will not notice the point now. Rule 5:25 (formerly Rule 5:21).

[5] Although defendant objected to this procedure at trial, he did not assign it as error on appeal.

These matters are relevant when the prior testimony of a witness is sought to be introduced as substantive evidence because the witness is unavailable at a later trial. But this was not the use made of the transcript here; it was used only in an effort to impeach Hubbard. The trial court told the jury in an oral instruction that Hubbard's prior statements were not substantive evidence and could not be considered on the question of the defendant's guilt or innocence but solely for the purpose of affecting his credibility. The procedure followed by the trial court is sanctioned by Code § 8.01-403,[6] which applies to criminal as well as civil cases. *Tate* v. *Commonwealth*, 155 Va. 1016, 1024, 154 S.E. 508, 511 (1930).

Furthermore, after the transcript was used in the questioning of Hubbard, the Commonwealth's Attorney made no effort to introduce it into evidence. Had the Commonwealth then sought to introduce the transcript into evidence to show that Hubbard had answered as claimed, the burden would have been on the prosecution to prove the transcript was accurate. *L. E. Patterson* v. *Commonwealth*, 222 Va. 612, 617, 283 S.E.2d 190, 193 (1981).

The defendant argues also that the Commonwealth's Attorney "could not fairly state . . . he was taken by surprise in Hubbard's refusal to testify" because Hubbard had told the prosecutor the day before trial he would not testify. Hence, the defendant maintains, the prosecutor did not establish the essential element of surprise in seeking permission to cross-examine Hubbard.

■ The defendant's argument misses the point. The question is not whether the Commonwealth's Attorney was taken by surprise when Hubbard refused to testify but whether the prosecutor was surprised by what Hubbard said when he began testifying.[7] There

---

[6] Code § 8.01-403 states:

A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement. In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness.

[7] We do not decide in this case whether it would have been permissible for the Commonwealth's Attorney to cross-examine Hubbard had the witness persisted in his refusal to testify.

can be no doubt the element of surprise then existed and it was not until then that the Commonwealth's Attorney used the transcript to cross-examine Hubbard.

## III.

In contending the trial court erred in refusing to strike the evidence,[8] the defendant's argument is straightforward: the Commonwealth failed to show he knew the property in question was stolen. A total of eight witnesses testified for the Commonwealth, the defendant states, and yet not one of them, including Keith William Hubbard, testified that the defendant had knowledge the property was stolen.

■ It is true, of course, that an essential element of the offense of receiving stolen property is guilty knowledge. It is also true that no witness testified directly that the defendant knew the property in question was stolen. But the element of guilty knowledge may be supplied by circumstantial evidence, *Lewis v. Commonwealth*, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983), including the circumstance that the accused was in possession of recently stolen property, *see Stapleton v. Commonwealth*, 140 Va. 475, 488-89, 124 S.E. 237, 241-42 (1924).

Here, police officers went to the defendant's home to execute a search warrant about 6:00 p.m. on September 21, 1983. They knocked on the door but received no response, although one of the officers observed "a subject come to the door, peer out at [the police] and then turn . . . and retreat back through the house." After further unsuccessful efforts to "get someone to unlock the door," an officer "kicked the front door in."

As the officers proceeded to search the house, they identified themselves "in a loud voice . . . trying to see if anyone was at home." At one point, an officer stood at the kitchen door leading to the basement and announced "in a loud voice who [he] was and for what purpose [he] was there and received no response." Finally, after the search had continued for about three hours, the

---

[8] The defendant moved to strike the evidence at the conclusion of the Commonwealth's case, but the motion was denied and the defendant proceeded thereafter to put on evidence in his own behalf. At the conclusion of all the evidence, the defendant renewed his motion to strike, and it was denied. By introducing evidence in his own behalf, the defendant waived his first motion to strike, so we will consider only his second motion, and that in light of all the evidence. *Starks v. Commonwealth*, 225 Va. 48, 55, 301 S.E.2d 152, 156 (1983).

defendant was discovered in the basement. He claimed that he was asleep in a basement bedroom during the search and did not hear the police "rummaging through [his] house."

During the search of the defendant's home, the police found and seized several dozen items, including electric typewriters, television sets, stereo sets, and sterling silver trays and bowls. Serial numbers had been removed from some of the items. Numerous items were identified as the fruits of a number of burglaries. Several of the burglaries had occurred within a matter of weeks before the search and seizure.

Included in the property seized were seven items identified by Mrs. Humphreys as having been stolen from her residence sometime between August 7 and 12, 1983. Among these items were an IBM typewriter, a color television set, and several silver trays.

Testifying in his own behalf, the defendant stated that he had purchased the items found in his home for the purpose of opening a business to sell used appliances and furniture. Concerning the seven items identified as having been stolen from the Humphreys' residence, the defendant said he purchased these items, along with a computer terminal,[9] in late August or early September from a man who was selling merchandise from a station wagon at a flea market. The defendant admitted he did not know the man and yet did not obtain his name or the license number of his vehicle. The defendant claimed he paid the man between $1,000 and $1,100 in cash,[10] but did not even test the items of electrical equipment before he purchased them.

The defendant also testified that he purchased from Keith William Hubbard most of the other items seized in the September 21, 1983 search and that Hubbard never told him the property was stolen. In his testimony, Hubbard confirmed that he did not tell the defendant the property was stolen, but Hubbard also said the defendant never inquired where the property "came from."

■ This evidence established beyond doubt that the defendant was in possession of items recently stolen from the Humphreys' residence. Proof of such possession constituted prima facie evidence that the defendant received the stolen goods with guilty knowledge and cast upon him the burden of going forward with evidence in explanation. *Westcott* v. *Commonwealth*, 216 Va. 123,

---

[9] The computer terminal had been stolen from the Lynchburg office of the Virginia Employment Commission.

[10] Mrs. Humphreys testified that her IBM typewriter alone was worth $1,000.

127, 216 S.E.2d 60, 64 (1975); *Henderson* v. *Commonwealth*, 215 Va. at 813, 213 S.E.2d at 784; *Reaves* v. *Commonwealth*, 192 Va. 443, 448-49, 65 S.E.2d 559, 562-63 (1951).

■ The defendant did produce evidence in explanation, but the jury was "not obliged to accept" what it obviously found was an unreasonable explanation. *Westcott*, 216 Va. at 127, 216 S.E.2d at 64. And, in the prosecution of this type of case, when a defendant's "hypothesis of innocence is [rejected as] unreasonable, evidence of possession of recently stolen goods is sufficient to support a conviction." *Id.* This proposition is especially true where, as here, the prima facie case made by the circumstance of such possession is buttressed by other strong circumstantial evidence of guilt.

For all these reasons, we will affirm the judgment of conviction.

*Affirmed.*