COURT OF APPEALS OF VIRGINIA


Present:  Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia


MICHAEL WILLIAM KOULOURIS
                                      MEMORANDUM OPINION* BY
v.    Record No. 1953-99-1            JUDGE NELSON T. OVERTON
                                           MAY 23, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     Lydia Calvert Taylor, Judge

             Allan D. Zaleski (Weisberg & Zaleski, P.C.,
             on brief), for appellant.

             Linwood T. Wells, Jr. (Mark L. Earley,
             Attorney General; Jeffrey S. Shapiro,
             Assistant Attorney General, on brief), for
             appellee.


     On appeal from his conviction of statutory burglary, in

violation of Code § 18.2-91, Michael William Koulouris contends

that the trial court erred in denying his motion to suppress an

eyewitness identification and that the evidence was insufficient

to support his conviction.  Finding no reversible error, we

affirm.

             On appeal, we review the evidence in
             the light most favorable to the
             Commonwealth, granting to it all reasonable
             inferences fairly deducible therefrom.  The
             judgment of a trial court sitting without a
             jury is entitled to the same weight as a
             jury verdict and will not be set aside

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

> unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

At approximately 3:00 a.m. on June 11, 1998, Richard Strom was awakened by a noise in his bedroom. Strom saw a man crouching at the foot of his bed. Strom began shouting at the man and reached for his handgun, which he kept in the bedside table. The burglar then pointed a weapon at Strom. Strom chased the man out of his bedroom and into the yard. The man grabbed a bicycle, belonging to Strom's wife, and rode away. Later, Strom realized that five fishing rods had been taken from his shed.

On June 20, 1998, Koulouris sold one of Strom's fishing rods to an employee of Harrison's Fishing Pier. Koulouris returned a few days later to sell additional rods. The pier employee notified police of possible stolen property, and the police arrived at the pier to arrest Koulouris.

The pier employee called Strom to notify him of the arrest. Strom arrived at the pier, where he asked police if he could see Koulouris. Detective Guy Evans, the investigating officer at the pier, refused, stating that showing Koulouris to Strom while in the back of the police car would be too suggestive. Strom noted that the man sitting in the back of the car, whom he

glimpsed, appeared to be the burglar, but that he could not be sure.

Strom testified that Detective Evans then showed him a photo array of suspects, with six pictures. Detective Evans testified that he did not recall showing Strom the array, which he had brought to the pier to show the pier employee. The array did not contain a photograph of Koulouris, although Strom did pick out one of the pictures as the man who had been in his home. Before leaving the pier, Strom did have the opportunity to see Koulouris after he exited the police cruiser; Strom told police that Koulouris was the man he had seen in his house.

Koulouris, after being indicted for grand larceny and statutory burglary, filed a motion to suppress all evidence regarding Strom's identification of him, as being unduly suggestive. Koulouris sought to suppress evidence of Strom's identification of Koulouris at the fishing pier, Strom's identification of Koulouris at the preliminary hearing, at which Koulouris was restrained and wearing prison clothing, as well as any further in-court identification that Strom would be asked to provide.

The trial court found that the basis for Strom's identification of Koulouris, "be that mistaken or correct identification, [was] a source of what he saw at the scene of the crime and not a suggestive view at the scene or at the preliminary hearing." The motion to suppress was denied.

-

Koulouris pled guilty to the grand larceny charge, which was later amended to a conviction of grand larceny by receiving stolen property, in violation of Code § 18.2-95. The trial court, after hearing evidence, convicted Koulouris of statutory burglary, in violation of Code § 18.2-91, and sentenced him to a total of twenty-three years imprisonment, with eighteen years suspended.

Koulouris contends that the trial court erred in denying his motion to suppress any evidence regarding Strom's identification of Koulouris. He argues Strom's identification had been unduly influenced by seeing Koulouris at the pier, in the police cruiser, and then again at the preliminary hearing while restrained and wearing prison clothing.

> In determining the reliability of a witness' identification, we look to the factors enunciated in Neil v. Biggers, 409 U.S. 188 (1972), as significant circumstances that may be considered along with other evidence. See Charity v. Commonwealth, 24 Va. App. 258, 262-63, 482 S.E.2d 59, 61 (1997). These factors include the following: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine the weight of the evidence, the credibility of witnesses, and the inferences to be drawn from proven

-

facts." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998).

Currie v. Commonwealth, 30 Va. App. 58, 73-74, 515 S.E.2d 335, 343 (1999).

Strom had ample opportunity to view Koulouris at the scene of the crime. Koulouris was standing at the foot of Strom's bed when Strom saw him. Although it was night, the room was illuminated by light from the television screen, a security light outside the window, and light from the living room, which was fifteen feet down the hall. Strom testified that he was "eyeball to eyeball" with the burglar, who stood at the bed long enough for Strom to shout at him and reach for a weapon. Strom then was able to view Koulouris three more times as he left the house. As Koulouris was picking up the bicycle, and twice as he was riding away, he looked over his shoulder at Strom, who was standing in the yard.

Strom's testimony at the suppression hearing was full of detail, both about the crime itself and about Koulouris' description. As the trial court described Strom's testimony relating to the night of the crime, "[i]t is clear from his testimony that [Strom] was in a state of heightened awareness out of fear for the safety of himself and his family and exhibited a high level of attention to detail." On the night of the burglary, Strom described Koulouris as a young white male, approximately sixteen years old, five feet, seven inches tall,

-

one hundred and forty to one hundred and fifty pounds, wearing a gray sweatshirt, blue jeans, and a dark baseball cap. When arrested, Koulouris, a young white male, described himself as seventeen years old, five feet, seven inches tall, and weighing one hundred and fifty pounds.

Strom testified that he was very certain as to his identification of Koulouris. At the motion hearing, he explained fully any inconsistencies or gaps in his previous descriptions of the burglar. The trial court was satisfied with Strom's credibility, and we cannot say as a matter of law that his testimony was inherently incredible. Further, a lapse of twelve days between the crime and Strom's viewing of Koulouris at the pier is not, of itself, a long enough period of time to sufficiently taint Strom's memory of events, especially considering the detailed account of the crime and subsequent events. Thus, based upon those factors enunciated in Biggers, we find that the identification of Koulouris was not so influenced by unduly suggestive procedures as to violate Koulouris' right to due process. Accordingly, the motion to suppress was rightly denied.

Koulouris next contends that the evidence was insufficient to support the conviction for statutory burglary, in violation of Code § 18.2-91. He argues that the only evidence supporting the conviction is Strom's identification and the fact that he was in possession of the fishing rods after the burglary.

-

For the reasons stated above, Strom's testimony identifying Koulouris as the burglar was not admitted in error.

Koulouris admitted to possessing the stolen rods, but testified that he had bought the rods from a friend, so that he could resell them for profit. The only evidence offered as to this transaction was the testimony of Koulouris. "The credibility of the witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is being presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1985).

While it is true that Koulouris offered an explanation regarding his possession of the stolen rods, the truth of such explanation is a question of fact, and the trial court is under no duty to accept that explanation. See Roberts v. Commonwealth, 230 Va. 264, 272, 337 S.E.2d 255, 260 (1985). The trial court's rejection of Koulouris' explanation, his possession of the rods nine days later, and Strom's identification of Koulouris as the man who was in the house the night of the crime, all support Koulouris' conviction.

The judgment of the trial court is affirmed.

Affirmed.

-