UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Huff and Callins
Argued at Richmond, Virginia


CHRISTIAN ARPAD PETROVICS

MEMORANDUM OPINION[*] BY
v.        Record No. 0393-22-2          JUDGE DOMINIQUE A. CALLINS
MAY 16, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

Michelle C. F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Christian Arpad Petrovics of rape and domestic assault and battery

of a family member, third offense. On appeal, Petrovics contends that the trial court improperly

limited his ability to use a transcript to impeach witnesses with prior inconsistent statements. He

also argues that the evidence was insufficient to sustain his convictions because the victim's

testimony was inherently incredible as a matter of law. For the following reasons, we affirm the

trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1 413.

BACKGROUND[1]

On November 29, 2020, C.P. was living in a tent in an area near Route 1. Approximately one week earlier, her husband, Petrovics, had arrived from Florida to visit her. Petrovics was originally supposed to stay only one night until a friend could pick him up, but the friend never arrived. C.P. asked Petrovics to leave but he refused, asserting that he was entitled to remain because "it was his campsite[,] too."

The next morning, Petrovics "tr[ied] to get" C.P. to have sex with him. Both had been drinking liquor, and C.P. "didn't feel good." Rebuffing his request, C.P. told Petrovics to "leave [her] alone" and that she "didn't want him to ever touch [her] again." Petrovics nevertheless began tugging her pants "until he got them down." He then lifted C.P.'s left leg and "proceeded to have sex" as she lay on her right side. Nauseated, C.P. began to "choke" and repeatedly told Petrovics to stop until he finally relented. She told him to leave.

Petrovics briefly departed before returning in a rage. Ignoring C.P.'s commands to leave, he began choking her with one hand while pinning her arms above her head with the other. He eventually stopped and left the tent. Before leaving, he accused C.P. of hitting him and yelled, "[Y]ou're going to jail today, bitch." C.P. called a friend and asked the friend to come get her. Petrovics called the police.

Spotsylvania Sheriff's Deputy Nathan Stocking arrived at the tent to investigate the alleged domestic assault. When Deputy Stocking arrived, C.P. was on the phone. After interviewing Petrovics, who had an injury resembling a "knuckle mark" on the right side of his head, Deputy

---

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Stocking handcuffed C.P. and told her that she was "going to jail." While speaking to her, Deputy Stocking saw that C.P.'s right arm was bleeding. C.P. told Deputy Stocking that Petrovics had assaulted, strangled, and raped her. She rejected the claim that she had struck Petrovics, explaining that he bumped his head in the woods. Deputy Stocking removed her handcuffs, and Deputy Brielle Walker transported C.P. to a hospital for treatment. Deputy Walker interviewed C.P. along the way and at the hospital.

Shannon Scott, a forensic nurse, interviewed C.P. at the hospital and prepared a forensic nurse examiner report and strangulation exam. Describing the attack to Scott, C.P. said that Petrovics had threatened, "You're my wife, I get what I want," before forcibly raping her. Afterward, Petrovics strangled her and said, "I will kill you, bitch[,] before I go to jail again." C.P. said that Petrovics also struck her left cheek bone. In addition, she reported that Petrovics had previously strangled her.

During the forensic examination, Scott found abrasions on C.P.'s left wrist and forearm that were "consistent with" her "abrased tissue" as well as multiple wounds on C.P.'s right forearm "consistent with bruising." She also found an injury to C.P.'s "fossa navicularis," an area near the entrance to the vagina. Scott did not find any signs of trauma to C.P.'s cheekbone or neck marks indicative of strangulation.

Detective Earl Swift also interviewed C.P. and had the police officers prepare a "Physical Evidence Recovery Kit" ("PERK").[2] Detective Swift later obtained a buccal swab of Petrovics's DNA. Petrovics could not be eliminated as an "additional contributor" to a DNA mixture found on C.P.'s thighs and external genitalia.

---

[2] The PERK comprised DNA samples obtained from C.P.'s mouth, "[v]aginal/cervical" region, "[t]highs/external genitalia," neck, and "perianal/buttocks" area.

Petrovics was subsequently indicted for rape and domestic assault and battery, third offense. At trial, C.P. testified to the events detailed above. She added that she believed Petrovics had ejaculated inside of her during the rape and that she did not have sex with him the previous night. She admitted that she was uncertain whether Petrovics had caused her arm to bleed and that she could not remember many details of the incident because it occurred approximately a year prior and had been "a traumatic experience." Acknowledging that she had been reluctant to undergo the forensic examination and declined further confirmatory testing, she explained that she had been "frantic" and felt that the process was "very degrading." She also testified that she obtained a "CT scan" the following week.

Deputy Stocking testified that he had found several cutting implements throughout the campsite but did not collect any for DNA testing. Detective Swift testified that police collected C.P.'s clothing and the PERK for forensic analysis, and although Petrovics had "offered to have his fingernails tested," doing so was "beyond [Detective Swift's] scope of investigation." Deputy Walker testified that C.P. eventually agreed to go to the hospital and that her initial account of the incident was "all over the place" and "a little bit vague."

At the conclusion of the Commonwealth's case-in-chief, Petrovics moved to strike the rape charge, arguing that the evidence failed to prove that C.P. did not consent to sexual intercourse or that he had used "force, threat, or intimidation" to accomplish it. He also moved to strike the felony domestic assault and battery charge, asserting that the evidence failed to prove an "unwanted and harmful touching" because C.P. could neither recall whether Petrovics had caused the injury to her arm nor remember "how long the strangulation was." The trial court denied the motion.

Angelina Campbell, a forensic nurse, testified for the defense. After reviewing the medical reports documenting the results of the forensic examination, Campbell concluded that either consensual or non-consensual intercourse could have caused the injury to C.P.'s fossa navicularis.

- 4 -

She also affirmed that there were no physical signs of C.P.'s strangulation. She added, however, that it is not uncommon for victims to "not have a single mark," even if "strangled to unconsciousness" or death.

According to Petrovics's testimony, he had consensual sex with C.P. on the morning in question more than once, including after she had discovered that he had been texting another woman. Later that morning, after C.P. brought up the earlier text messages, Petrovics attempted to leave the tent. As the two squabbled, C.P., who had been drinking, grabbed at a liquor bottle that Petrovics had wedged under his knee. Petrovics pushed C.P. several times as he attempted to leave the tent. When Petrovics took the liquor bottle back from C.P., she then hit Petrovics in the head. Petrovics denied that C.P. ever told him to stop having sex with her and asserted that she drinks heavily, including on the morning in question and during the night before. Petrovics admitted that he had refused to leave the tent despite C.P.'s demand but maintained that his refusal was due to the cold, rainy weather outside. Petrovics testified that he called the police because he was "tired of her always hitting" him.[3]

At the conclusion of the evidence, Petrovics renewed his motion to strike, which the trial court denied. During closing argument, Petrovics argued that the evidence was insufficient to support either charge because C.P.'s testimony lacked credibility. Petrovics argued that the physical evidence conflicted with C.P.'s account of the assault "because they needed more follow-up . . . if they had followed up . . . [they would have] realized, no, these aren't injuries." Although he conceded that nothing in the medical reports from the forensic examination contradicted her testimony, Petrovics argued that C.P.'s motive to fabricate, inability to recall details, and inconsistencies in her account rendered her testimony inherently incredible.

---

[3] On cross-examination, Petrovics was impeached by his criminal record. Petrovics admitted that he had been previously convicted of at least three felonies and one misdemeanor theft offense.

The trial court found that there was "no question" that Petrovics "assaulted his wife, again," and there is "absolutely no reason to believe [C.P.] harmed herself." Continuing, the trial court found that "both the parties" had been drinking, an argument had occurred, and the "marks" on C.P.'s wrist were "consistent with it being grasped very hard" as she had alleged. The trial court found Petrovics's testimony incredible and determined that C.P.'s account of the assault was credible. Accordingly, the trial court convicted Petrovics of rape and domestic assault and battery, third offense. Petrovics appeals.

## ANALYSIS

### I. Limitation of Impeachment Evidence

Before trial, defense counsel had an employee transcribe an audio recording of C.P.'s testimony from the preliminary hearing. When C.P. testified on cross-examination that she did not recall making certain statements at the preliminary hearing, defense counsel confronted her with his "transcript" in an apparent attempt to impeach her using a prior inconsistent statement.[4] Specifically, defense counsel asked C.P. questions that appeared to lay a foundation for admission of the "transcript":

| [Defense counsel]: | Ma'am, first off, I want to make sure you understand what this document is. Can you identify what it is based off of the title? |
|---|---|
| [C.P.]: | Complete transcript of all of the evidence and other incidents, blah, blah, blah, that part? |
| [Defense counsel]: | Yes, ma'am. |
| [C.P.]: | Yes. |

---

[4] The trial court specifically found that the "transcript" defense counsel sought to produce was "a typed-up iteration of a tape that was made by defense counsel, which [he had] a statutory right to do during the preliminary hearing."

| [Defense counsel]: | So the last page, can you identify what's on that last page? |
|---|---|
| [C.P.]: | Last page. The certification. |

The Commonwealth objected, arguing that defense counsel could not use the unauthenticated "transcript" to impeach C.P. and that C.P. was incapable of authenticating it. Defense counsel countered that although a court reporter had not prepared the document, a "member of [his] staff" had done so and "certified" its accuracy.

The trial court found that defense counsel was "attempting to authenticate a document through a witness who is manifestly incapable" of doing so. Accordingly, the trial court ruled that defense counsel could not use the unauthenticated document to impeach the witness by admission of a prior inconsistent statement. Defense counsel then proceeded to use the document to refresh the recollection of witnesses.[5]

Petrovics contends that the trial court erroneously ruled that he could not use a "transcript" to impeach C.P. or Deputy Walker at trial. He asserts that the trial court incorrectly ruled that "only a court reporter could produce a transcript it would accept." Citing Virginia Rule of Evidence 2:903

---

[5] By stipulation, the Commonwealth later consented to defense counsel reading two portions of the document into evidence "for the purposes of impeachment." The first established that C.P. had previously testified that Petrovics had not "overstayed his welcome" before the incident. The second established that Deputy Walker had described C.P.'s account as "vague" and had to "persuade" her to go to the hospital. Contrary to Petrovics's assertion at oral argument, there is no evidence that the Commonwealth withdrew its objection to the admission of the entire document. Although the Commonwealth did not object, and indeed stipulated, to the authenticity of those two portions of the document, the trial court was not required to find that those statements were authenticated. Insofar as Petrovics asserts that the trial court erred by accepting the stipulation without revisiting its authenticity ruling, Petrovics did not make that argument to the trial court, nor did he raise it in his opening brief. We will not consider it on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."). Although there are two exceptions to Rule 5A:18, Petrovics did not invoke them, and we will not invoke them *sua sponte*. *See Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*).

and Code § 47.1-2, Petrovics argues that the transcript he produced was "self-authenticating." Petrovics is wrong.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* (alteration in original) (quoting *Carter*, 293 Va. at 543-44).

The use of prior inconsistent statements to impeach a witness "is fundamental to the right of cross-examination." *Hall v. Commonwealth*, 233 Va. 369, 374 (1987) (citing *Thornton v. Downes*, 177 Va. 451, 459 (1941)). In general, a prior inconsistent statement is admitted solely to attack the credibility of a witness who has offered conflicting testimony at different times and "not as substantive evidence of its content." *Id.* at 369. The procedure for impeaching a witness using prior inconsistent statements is well-established. *See* Code § 19.2-268.1. First, counsel must call the witness's attention to the circumstances of the occasion on which the alleged prior statement was made. *Waller v. Commonwealth*, 22 Va. App. 53, 58 (1996). Next, counsel must ask the witness whether she previously made a particular statement and "[i]f the witness denies or is unable to recall having made the statement, counsel must then prove the statement actually was made." *Patterson v. Commonwealth*, 222 Va. 612, 616-17 (1981).

- 8 -

In *Patterson*, our Supreme Court recognized that "[i]t is one thing . . . to say that counsel may read a witness' prior statement from a transcript in framing a question and quite a different matter to say that the mere reading constitutes proof the statement actually was made." *Id.* at 617. Thus, a litigant may read a statement from an unauthenticated transcript of a prior proceeding in framing cross-examination questions, but she must authenticate the transcript if she intends to use it to prove that the witness actually made that specific statement in a prior proceeding. *See Roberts v. Commonwealth*, 230 Va. 264, 269 (1985) (observing that authentication of transcript is required only if it is used as "substantive evidence" to prove that the witness made the statement).

Although not the exclusive means of laying an impeachment foundation, a certified transcript prepared by a court reporter has the advantage of being "self-authenticating." *See Waller*, 22 Va. App. at 60 n.1 (observing a duly certified transcript by a court reporter is "self-authenticating" under Code § 8.01-420.3); *see also Newton v. Commonwealth*, 29 Va. App. 433, 443 (1999) (quoting *Edwards v. Commonwealth*, 19 Va. App. 568, 571-72 (1995) (observing that a court reporter's transcript is the preferred, but not exclusive means of impeachment)). To authenticate a transcript of prior testimony prepared by someone other than a court reporter, counsel must call "another witness to prove the first witness had testified as reported in the transcript." *Patterson*, 222 Va. at 617.

The record establishes that Petrovics failed to authenticate the "transcript" as required for impeachment. The transcript had not been prepared by a court reporter and thus was not "self-authenticating" under Code § 8.01-420.3. *See Waller*, 22 Va. App. at 60 n.1. Further, Petrovics did not call "another witness to prove the first witness had testified as reported in the transcript." *Patterson*, 222 Va. at 617. Specifically, he did not call a witness to testify regarding the document's authenticity as a true and accurate transcription of C.P.'s testimony at the preliminary hearing. Although Petrovics questioned C.P. about the document, C.P. had no direct knowledge of

its preparation and could not otherwise recall making a prior inconsistent statement. Accordingly, the trial court correctly concluded that C.P. was "manifestly incapable" of authenticating the transcript and properly ruled it inadmissible to prove that she had previously testified inconsistently. *Cf. Patterson*, 222 Va. at 617 (holding that defense counsel was required to call a witness to authenticate a transcript before reading from it to prove a prior inconsistent statement).

The record belies Petrovics's assertion that the trial court ruled that "only a court reporter could produce a transcript it would accept." To the contrary, the trial court ruled only that defense counsel could not use the document to prove that a witness made a prior inconsistent statement without first authenticating the document. The trial court did not bar Petrovics from calling a witness to authenticate the document. Moreover, the trial court still permitted Petrovics to use the document to refresh the recollection of witnesses during cross-examination. *See Roberts*, 230 Va. at 269 (affirming the trial court's ruling allowing counsel to frame questions using unauthenticated transcript without offering it as substantive proof of the statements); *cf. Waller*, 22 Va. App. at 60 (reversing the trial court's ruling allowing counsel to frame questions using a properly authenticated transcript but barring admission of transcript itself).[6]

Accordingly, we hold that the trial court did not abuse its discretion in refusing to allow Petrovics to use an unauthenticated "transcript" to impeach a witness regarding prior inconsistent statements.

---

[6] In his reply brief, Petrovics contends that Rule 2:903 and Code § 47.1-2 made the transcript "self-authenticating." "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Petrovics did not raise this argument in his opening brief, nor did he raise this argument at trial, and thus it is waived under Rule 5A:18. Petrovics has not invoked the exceptions to Rule 5A:18, and we will not do so *sua sponte*. *See Edwards*, 41 Va. App. at 761.

## II. Sufficiency of the Evidence

Petrovics next contends that the evidence was insufficient to support his convictions for rape and domestic assault and battery, third offense. He does not dispute that C.P.'s version of events, if believed, would prove the elements of each offense. Rather, Petrovics contends that C.P.'s testimony was inherently incredible as a matter of law and that her description of the assault was "demonstrably impossible based upon the physical facts." In addition, he argues that the victim's intoxication, fear of arrest, and inconsistencies in her accounts demonstrate that she fabricated the allegations against him. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). In such cases, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

We have long held that witness credibility is a determination "within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of

belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). Testimony is inherently incredible only where it is "so manifestly false that reasonable [people] ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not differ." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

Consistent with those principles, we have held that testimony "may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (citing *Juniper*, 271 Va. at 415). Similarly, a "motive[] to lie" does not *per se* render a witness's testimony unworthy of belief. *Id.* at 627. Instead, those circumstances are appropriately submitted to and resolved by the fact finder. *Id.* In this case, Petrovics points to nothing that renders C.P.'s testimony inherently incredible as a matter of law. After weighing her inconsistent statements and potential motive to lie against the balance of the evidence, the trial court credited her testimony. Indeed, contrary to Petrovics's assertion on brief, the physical evidence *corroborated* rather than detracted from C.P.'s testimony. *Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness's testimony was not inherently incredible when it was corroborated by other evidence). C.P. had abrasions on her left forearm and wrist and wounds on her right forearm that were consistent with Petrovics grabbing her arms during the assault. Moreover, C.P.'s fossa navicularis was injured, and Petrovic's DNA was inside her vagina, consistent with aggressive sexual contact. Although C.P. had no marks on her neck, the forensic nurse whom Petrovics called as a witness testified that even in severe cases it is common for victims to have no apparent signs of strangulation.

In addition, C.P.'s description of the incident to Scott was consistent with her trial testimony. *See Anderson v. Commonwealth*, 282 Va. 457, 464-65 (2011) (recognizing Virginia's

- 12 -

adherence to the principle that a fact finder may consider a witness's prior consistent statements in assessing credibility). At the hospital, C.P. reported that Petrovics had said he was entitled to sex and that he forcibly raped her; afterward, he pinned her arms above her head, strangled her, and threatened to kill her to avoid imprisonment. She admitted that she had kicked Petrovics while resisting the attack. That Deputy Stocking observed a "knuckle mark" on Petrovic's head that conflicted with C.P.'s denial that she had struck him does not render her testimony inherently incredible. *See Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015) (recognizing that a fact finder is "not required to believe all aspects of the testimony of a witness").

Finally, Petrovics's own testimony corroborated C.P.'s account. He admitted that he and C.P. had been drinking and that he had disregarded her repeated commands to leave her property. He also admitted to pushing C.P. during a quarrel and having sex with her. Although Petrovics maintained that he had refused to leave because of foul weather, that C.P. drunkenly instigated the quarrel, and that she never told him to stop having sex with her, the trial court "was at liberty to discount [his] self-serving statements as little more than lying to 'conceal his guilt,'" and "could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

Viewing the foregoing evidence in the light most favorable to the Commonwealth, we cannot say that C.P.'s testimony was either manifestly false or shown to be false, and thus inherently incredible as a matter of law. It is well-settled that in sexual assault cases, the sole testimony of the victim, if not inherently incredible, is sufficient to sustain a conviction. *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). Because C.P.'s testimony was not inherently incredible, the trial court was entitled to rely on it to convict. *Id.* Accordingly, we hold that the evidence was sufficient to prove the charged offenses.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*