COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Frank and Senior Judge Hodges
Argued at Salem, Virginia


LAFAYETTE SCOTT HODNETT
                                              OPINION BY
v.    Record No. 2565-98-3          JUDGE ROBERT P. FRANK
                                            JUNE 27, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                      James F. Ingram, Judge

          S. Jane Chittom, Appellate Counsel (Elwood
          Earl Sanders, Jr., Appellate Defender; Public
          Defender Commission, on briefs), for
          appellant.

          Steven A. Witmer, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Lafayette Scott Hodnett (appellant) appeals his conviction

of operating a motor vehicle after having been adjudicated an

habitual offender in violation of Code § 46.2-357(B).  On appeal,

appellant contends the trial court erred: 1) in denying his

motion to suppress because his continued detention, once he

produced identification, was an unlawful seizure; and 2) in

finding the evidence sufficient to support his conviction.  We

disagree and affirm the conviction.

                        I.   BACKGROUND

     On May 19, 1998, Officer Moorefield of the Danville Police

Department was on special assignment with the Danville Emergency

Response Team.  He was in a van with other team members on

Riverside Drive when he saw from the van's open side door a small, light blue vehicle beside the van. The driver, who was the only occupant in the vehicle, was a black male wearing a black skull cap. Officer Moorefield thought he recognized the driver as Gary Hodnett, an individual for whom the police had outstanding warrants. The police van had to stop at a traffic light, and Moorefield lost sight of the blue car. However, he was able to see the letters ZDK on the car's license plate and radioed a police dispatcher with a description of the vehicle and the partial license plate number. The dispatcher issued a "be-on-the-lookout-for" to the other police units on duty.

Officer Crawford of the Danville Police Department had heard the "be-on-the-lookout-for" call earlier that evening. While he was observing traffic at the intersection of Riverside Drive and Mount Cross Road, a car matching the description issued by the dispatcher drove past him. A man wearing a neon green shirt and a black skull cap was driving the car, and a female rode in the front passenger seat. Crawford pulled onto Riverside Drive but was unable to get behind the car due to other traffic. Then, Crawford was forced to stop at a traffic light for approximately fifteen to twenty seconds but watched the blue car turn into a shopping center. Crawford testified that he was in a position at the traffic light to see any pedestrians crossing Riverside Drive in the vicinity of the shopping center. The only person he saw that evening wearing a neon green shirt and skull cap was appellant.

Crawford drove into the shopping center and saw the blue car parked in a parking space in front of a Subway restaurant. A

black male wearing a neon green shirt and a black skull cap was between two and five feet from the driver's side door of the car and was walking toward the Subway. The man entered the Subway, and the female passenger remained in the car. She joined him in the Subway within minutes. The couple was in the Subway for approximately ten to fifteen minutes. When they exited the Subway, they walked on the sidewalk toward the end of the building, away from the blue car. Crawford approached the couple when they turned the corner of the building into an alley. Crawford asked the man for identification. The man produced a Virginia identification card showing that he was Lafayette Scott Hodnett. Crawford stated that he thought the man he was stopping was Gary Hodnett. Crawford told appellant that he stopped him because an off-duty officer had seen him earlier in the evening and thought he was Gary Hodnett. Appellant said, "Everybody always thinks I'm Gary, but that's my brother."

Detective Jones, along with other officers, arrived on the scene as back-up, and Crawford took appellant's identification card to the police car to check appellant's driving status. Jones talked with appellant while Crawford was in the police car.

Crawford testified that he checked appellant's driving status because, based on his past experience, when a driver presents an identification card, they typically are not licensed. The driving status check showed that the identification number belonged to Lafayette Scott Hodnett and

that he was an habitual offender.  Crawford then placed appellant under arrest for driving after having been declared an habitual offender.  During the drive to the magistrate's office, appellant told Crawford that he had seen the off-duty officer in the van on Riverside Drive earlier in the evening.

Appellant testified that he walked across the shopping center parking lot from a Wendy's restaurant to the Subway restaurant.  As he crossed the parking lot, a woman, Jamie Long, called out his name.  She was alone in a car parked in front of the Subway restaurant.  Appellant said he walked to the car to speak with her and then went into the Subway restaurant.  After appellant sat down to eat, Long came into the restaurant.  Appellant stated that he was wearing a lime green shirt and a black skull cap.  Appellant admitted he had been convicted of four felonies and a misdemeanor involving moral turpitude.

Erica Dixon testified that she loaned her blue Isuzu I Mark to Sherman Gratsy on May 19, 1998.  She stated that the first three letters of the license plate for the vehicle were ZDK.  Dixon testified that she had to get her car the next day at the parking lot across from the Subway restaurant because Gratsy parked it there due to problems with the car's brakes.

Sherman Gratsy testified that he borrowed Dixon's car on the morning of May 19, 1998 to drive to work.  He stated that he was wearing a lime green shirt and a black skull cap.  On the evening of May 19, 1998, he took a friend, Jamie, to Burger

King.  After leaving Burger King, he began having problems with the car's brakes and pulled over between a Wendy's restaurant and a Subway restaurant.  He walked across the street to a K-Mart store to telephone Dixon.  He was unable to reach her so he called his girlfriend's grandmother to ask for a ride home.  He testified that he was gone from the car for approximately twenty minutes, and when he returned, Jamie was gone.  Gratsy admitted that he is appellant's good friend.

## II.  ANALYSIS

Appellant contends the trial court erred:  1) in denying his motion to suppress because the continued detention, once he produced identification, was an unlawful seizure; and 2) in finding the evidence sufficient to support his conviction.  We disagree and affirm the conviction.

In reviewing a trial court's denial of a motion to suppress:

> [T]he burden is on the appellant to show that the trial court's decision constituted reversible error.  We view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  We review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards to the particular facts of a case, such as determinations of reasonable suspicion and probable cause.

Quinn v. Commonwealth, 25 Va. App. 702, 712-13, 492 S.E.2d 470, 475-76 (1997) (citations omitted).

"The [F]ourth [A]mendment does not proscribe all seizures, only those that are 'unreasonable.' Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers." The validity of a seizure "'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." Ordinarily, in the absence of consent, even a brief detention must be based on at least a reasonable, articulable suspicion the person seized is engaged in criminal activity. However, as the United States Supreme Court has held, the absence of probable cause or reasonable suspicion of criminal activity does not necessarily render a detention unlawful.

Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 126-27 (1998) (en banc) (citations omitted).

Courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that "trained law enforcement officers may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982). Attention must be focused on objective reasonableness rather than on the police officer's subjective intent.

Deer v. Commonwealth, 17 Va. App. 730, 734, 441 S.E.2d 33, 36 (1994).

Code § 46.2-345(A)(3) states that issuance of an identification card is dependent upon the satisfaction of the Department of Motor Vehicles that the applicant needs the card

or that the applicant demonstrates a bona fide need for the card.  See Code § 46.2-345(A)(3).

On brief, appellant concedes that the initial stop by Crawford to determine appellant's identity was valid under the Fourth Amendment.  Therefore, we only address whether Crawford had reasonable suspicion, after appellant produced his Virginia identification card, to detain appellant to run the check on appellant's driving status.

We agree with appellant that he was detained when Crawford took the identification card to the police unit to run the driving status check.[1]  The evidence showed that there was a significant police presence when appellant was stopped and asked to present identification.  Crawford took appellant's identification to the police unit, which reasonably could have led appellant to believe he was not free to leave.  Furthermore, in order to leave at that point, appellant would have had to leave without his identification card.  See Brown v. Commonwealth, 17 Va. App. 694, 697, 440 S.E.2d 619, 621 (1994).

Crawford's continued detention of appellant, however, was not unreasonable.  When Crawford saw appellant's identification

---

[1] "'[If] the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed [that] he was not free to leave if he had not responded, . . . the [encounter] resulted in a detention under the Fourth Amendment.'"  Commonwealth v. Satchell, 15 Va. App. 127, 133, 422 S.E.2d 412, 416 (1992) (quoting I.N.S. v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)).

card, he developed a reasonable, articulable suspicion that appellant was engaged in criminal behavior, specifically, driving without a driver's license.  Crawford testified that when appellant produced the identification card instead of a driver's license, he suspected that appellant was not a licensed driver because, in his experience, a person who has an identification card does not hold an operator's license. Clearly, the requirement of Code § 46.2-345(A)(3) that the Department of Motor Vehicles must be satisfied that there is a need for issuance of the identification card supports Crawford's testimony that licensed drivers typically do not have identification cards.  Crawford's suspicion that appellant was unlicensed was objectively reasonable given his past experience and the requirement of Code § 46.2-345(A)(3) for need for an identification card.  We, therefore, hold that appellant's continued detention was not unreasonable and the trial court properly denied appellant's motion to suppress.

> When the sufficiency of the evidence in a criminal case is challenged on appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. Great deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony.  Thus, a trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.

<u>Walton v. Commonwealth</u>, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998) (citations omitted).

In this case, the evidence was sufficient to support appellant's conviction. Crawford testified that he saw a black male driving the small blue car. The man was wearing a neon green shirt and a black skullcap. When Crawford stopped at the traffic light, he saw the blue car turn into the shopping center. He had a clear view of any pedestrians crossing the street, and appellant was the only person he saw that evening in a neon green shirt and skullcap. When Crawford turned into the shopping center, he saw appellant near the driver's side door of the blue car. Appellant admitted that he had seen Officer Moorefield in the van earlier in the evening.

The trial court rejected the testimony of appellant, Erica Dixon, and Sherman Gratsy. We will not disturb that determination on appeal. Accordingly, we find the evidence sufficient to support appellant's conviction.

For these reasons, we hold that the trial court did not err in denying appellant's motion to suppress and in finding the evidence sufficient to support appellant's conviction.

<u>Affirmed.</u>