COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Senior Judge Overton
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                 MEMORANDUM OPINION[*] BY
v.        Record No. 2715-04-1                JUDGE D. ARTHUR KELSEY
                                                      MAY 3, 2005
JEFFREY A. BRYANT


               FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                             A. Bonwill Shockley, Judge

                  John H. McLees, Senior Assistant Attorney General
                  (Judith W. Jagdmann, Attorney General, on brief), for
                  appellant.

                  Melinda R. Glaubke (Slipow, Robusto & Kellam, P.C., on
                  brief), for appellee.


       The Commonwealth appeals a trial court order granting Jeffrey Bryant's motion to

suppress incriminating evidence found in a trash can he left by the side of the road for pickup.

The trial court held Bryant retained an objectively reasonable privacy interest in the garbage

found in his trash can.  We disagree and hold the court erred as a matter of law in concluding that

Bryant retained any Fourth Amendment privacy interest in his discarded trash.

                                            I.

       Jeffrey Bryant leases a trailer in the Derby Run Trailer Park, a privately owned

residential community in Virginia Beach.  A common access road leads into the community,

providing ingress and egress for both the residents and the public.  Though no gate or guard

station blocks the entry into the community, the property manager placed a no-trespassing sign

_____
       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

near the entrance of the road. The public nonetheless has full access, unimpeded by any physical impediments, to the neighborhood.

A private refuse service provides regular garbage collection for the community. Like many residents, Bryant puts his trash can by the side of the road the night before the next morning's pickup. On February 19, 2004, as he usually does, Bryant placed the can about two to three feet from the side of the road, expecting the trash truck the following day to dump the trash into the truck and leave the can for future use.

Bryant did not know it, but the police had been gathering information from confidential sources suggesting that he manufactured and distributed marijuana from his residence. After Bryant put his trash out on the evening of February 19, officers drove up the common access road to the edge of Bryant's yard. From the passenger side of the vehicle, an officer "just opened the lid and grabbed the trash right out." The trash can, which Bryant estimated to be the usual two to three feet from the side of the road, was within the officer's reach. In his testimony, the officer agreed that the can was "at the curb side for collection where a trash truck would be able to get to it." The officer explained that he did not physically "take steps to go up on the curb or go up on the property or anything like that."

The officers found evidence of marijuana in Bryant's garbage. They used this evidence to obtain a search warrant for his residence, which resulted in the discovery of additional inculpatory evidence leading to Bryant's indictment for possession of marijuana with intent to distribute in violation of Code § 18.2-248.1. Prior to trial, Bryant moved to suppress the evidence retrieved pursuant to the search warrant on the ground that the warrant relied solely on the garbage collected from his trash can. The police seized the garbage, Bryant argued, in violation of the Fourth Amendment as well as the Virginia Constitution. The trial judge agreed,

finding it legally dispositive that the police entered the community on a private access road marked by a no-trespassing sign. "In this case," the judge explained, "if the police had asked the owner of the trailer park to come in, I've got no problem." "We had a trespassing sign," the judge noted. When the prosecutor raised a point of clarification, asking "had there been permission, it would have been different?," the judge answered yes.

After granting the motion to suppress from the bench, the trial judge entered an order memorializing her ruling. The order stated that "for the reasons set forth in the record," the court granted the motion to suppress all evidence obtained from the "curtilage" of Bryant's residence. The Commonwealth filed this interlocutory appeal pursuant to Code § 19.2-398(2). Accepting the historical facts adopted by the trial court, the Commonwealth argues that the court erred as a matter of law both in its reasoning and result.

II.

A. STANDARD OF REVIEW IN FOURTH AMENDMENT CASES

We defer on appeal to the trial court's findings of "historical fact," but consider *de novo* the "ultimate question" whether the officer violated the Fourth Amendment. Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449-50 (2003) (quoting Barkley v. Commonwealth, 39 Va. App. 682, 689-90, 576 S.E.2d 234, 237-38 (2003)).

The Fourth Amendment safeguards "the privacy and security of individuals against arbitrary invasions by governmental officials." El-Amin v. Commonwealth, 269 Va. 15, 20, 607 S.E.2d 115, 117 (2005) (citation omitted). The Fourth Amendment "does not proscribe all seizures, only those that are 'unreasonable.'" Hodnett v. Commonwealth, 32 Va. App. 684, 690, 530 S.E.2d 433, 436 (2000) (citations omitted); Barkley, 39 Va. App. at 691, 576 S.E.2d at 238. The text of the Fourth Amendment draws the line there; so too must the courts.

Essential to the reasonableness inquiry is determining whether the defendant had a subjective expectation of privacy in the area or items implicated by the search. Megel v. Commonwealth, 262 Va. 531, 534, 551 S.E.2d 638, 640 (2001). And even if he has, the constitutional legitimacy of this expectation in the end depends not only on the person's subjective beliefs — society, too, must be "willing to recognize that expectation as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001) (quoting California v. Ciraolo, 476 U.S. 207, 211 (1986)). The burden of proving a reasonable expectation of privacy rests on the defendant. Sharpe v. Commonwealth, 44 Va. App. 448, 455, 605 S.E.2d 346, 349 (2004).

### B. PRIVACY INTEREST IN GARBAGE LEFT FOR STREET-SIDE PICKUP

Under settled law, discarded garbage placed on the side of the street for pickup does not fall within any recognized privacy interest protected by the Fourth Amendment. See California v. Greenwood, 486 U.S. 35, 40-42 (1988); United States v. Kramer, 711 F.2d 789, 792 (7th Cir. 1983); United States v. Crowell, 586 F.2d 1020, 1025 (4th Cir. 1978). When someone puts trash out for collection, he knows someone else (usually a total stranger) will be taking the garbage away — hopefully never to be seen again. An individual places "refuse at the curb for the express purpose of conveying it to a third party, the trash collector," who might himself sort "through [the] trash or [permit] others, such as the police, to do so." Greenwood, 486 U.S. at 40. When left by the side of the road, trash becomes "readily accessible to animals, children, scavengers, snoops, and other members of the public." Id.

The trial court appeared to accept this proposition in the abstract, but concluded that it had no application here for three reasons. First, the court held the police drove down the common access road to the private community in violation of the no-trespassing sign. Had the officers obtained permission to enter from the owner, the trial judge stated, she would have "no

- 4 -

problem" with it. In addition to the alleged trespass, the court also found legally relevant that private, not public, trash trucks picked up the refuse in this community. Finally, the court concluded that the trash can — though only two to three feet from the street — was still subject to a reasonable expectation of privacy because Bryant left the can within (albeit barely) the curtilage of his residence. We find none of these points persuasive.

(i) *The No-Trespassing Sign & The Private Common Access Road*

Trespass law has marginal, at best, relevance to the Fourth Amendment analysis. As has been often said, "the Fourth Amendment does not protect possessory interests in land." Kramer, 711 F.2d at 794 (citing Rakas v. Illinois, 439 U.S. 128, 143-44 n.12 (1978), and Hester v. United States, 265 U.S. 57 (1924)). "Every trespass, by definition, invades someone's right of possession, but not every government trespass violates the Fourth Amendment." Id. A trespass is neither "necessary nor sufficient" to a finding of a Fourth Amendment violation. United States v. Karo, 468 U.S. 705, 713 (1984). As a result, the law of trespass has "little or no relevance to the applicability of the Fourth Amendment." Oliver v. United States, 466 U.S. 170, 183-84 (1984).[1] The primary focus of the Fourth Amendment remains always on the legitimacy of the claimed privacy interest implicated by the seizure — not on technical trespass principles employed by the common law.

Greenwood found no legitimate privacy interest in garbage left by the side of the road for pickup. True, the particular fact pattern in Greenwood involved a public street, and thus, the police committed no trespass by driving on it. But nothing in the reasoning of Greenwood

---

[1] See also United States v. Jackson, 585 F.2d 653, 659 (4th Cir. 1978) ("A trespass is only relevant [in a Fourth Amendment context] if it represents an invasion of a defendant's reasonable expectancy of privacy."); Atwell v. United States, 414 F.2d 136, 138 (5th Cir. 1969) ("Moreover, even if the officers were trespassing on private property, a trespass does not of itself constitute an illegal search.").

suggests that fact had any legal significance. The point of the case was the accessibility of the discarded garbage to "animals, children, scavengers, snoops, and other members of the public" and the deliberate decision by the owner to expose his garbage to these risks "for the express purpose of having strangers take it" away for disposal. Greenwood, 486 U.S. at 40-41. It would not be sensible to say one loses his privacy interest in discarded trash to every dog, child, scavenger, and snoop in the neighborhood (along with every nameless worker on the trash truck), but still retains a *legitimate* privacy interest in the discarded trash as against all law enforcement officers. The concept of privacy, as delicate as it might be, cannot be so easily segmented.

The trial court, therefore, erred in finding the police officers' use of a private common access road posted with a no-trespassing sign to be legally dispositive. To be sure, the point is all but irrelevant to the Greenwood analysis as applied to the facts of this case.

(ii) *Public v. Private Trash Collectors*

We also find legally immaterial the trial court's distinction between private and public trash collectors. Throwing garbage into a trash can to be emptied by a private contractor, from a practical point of view, is no less a relinquishment of one's privacy interest in the garbage than throwing the same rubbish into a can to be emptied by municipal trash collectors. It is the act of throwing the trash away — not the person to whom it is being thrown — that is important. See United States v. Hall, 47 F.3d 1091, 1097 (11th Cir. 1995). "We do not read Greenwood as attributing any weight to such a distinction." Id. Nor do we understand "how contracting with a private garbage collection service diminishes the probative value of the fact that the garbage was conveyed to a third party." Id.; see also State v. Fortune, 20 P.3d 74, 80 (Kan. Ct. App. 2001) ("The police did not infringe upon any societal values protected by the Fourth Amendment when they searched Fortune's trash even though the garbage was located adjacent to his home, was

deposited in a private garbage company's lidded container, and was retrieved from the container by the police rather than garbage haulers.").

    (iii) *The Curtilage & The Trash Can*

We accept Bryant's testimony that he placed the trash can about two to three feet from the street. We do not similarly defer, however, to the legal conclusion the trial court attached to this fact because the question "whether an area is within the curtilage is ultimately a legal one." United States v. Breza, 308 F.3d 430, 435 (4th Cir. 2002); United States v. Diehl, 276 F.3d 32, 38 (1st Cir. 2002); United States v. Johnson, 256 F.3d 895, 912-13 (9th Cir. 2001) (*en banc*) (*per curiam*).[2] For purposes of this appeal, however, we need not independently review the trial court's curtilage finding because it does not affect the result.

Under the Greenwood analysis, the "mere intonation of curtilage, however, does not end the inquiry." United States v. Hedrick, 922 F.2d 396, 399 (7th Cir. 1991). Whether a trash can left two to three feet away from the street can be somehow deemed within the curtilage is a "distinction without a difference" under Greenwood. United States v. Wilkinson, 926 F.2d 22, 27 (1st Cir. 1991). Here again, a trash can a few inches over the property line (on the street curb) can hardly be given no Fourth Amendment protection while a trash can two to three feet within the property line (within reach of the street curb) receives absolute protection. See Stone v. State, 402 So.2d 1330, 1332-33 (Fl. Dist. Ct. App. 1981) (finding search of trash cans placed in yard, "three to four feet from the street curb," was not unreasonable because "it makes no

---

  [2] "As a general proposition, the curtilage of the home protected by the Fourth Amendment is the area immediately surrounding the home to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." Jefferson v. Commonwealth, 27 Va. App. 1, 16, 497 S.E.2d 474, 481 (1998) (citation and internal quotation marks omitted). The "curtilage concept" requires a consideration of the "proximity of the area . . . to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987).

difference whether the trash is placed for collection on the street right of way or just inside the

property line from the right of way").

No principled basis could justify such seemingly arbitrary, dissimilar treatment. As one

court well put it:

> When dealing with trash set out for collection, making the perimeter of
> the curtilage decisive for Fourth Amendment purposes lacks any
> reasonable basis and would lead to wholly irrational results. Curtilage is
> a legal concept, not a surveying one. Most people probably have no idea
> what the word "curtilage" even means, much less where, on their
> property, it ends. Nor do they, as a practical matter, give a moment's
> thought to whether the place where they set their trash for collection is
> within or without this unmarked boundary.

State v. Sampson, 765 A.2d 629, 636 (Md. Ct. App. 2001). Given these practical realities,

calibrating Fourth Amendment privacy interests in discarded garbage to the exact physical

boundaries of the curtilage would disjoint the scope of the Fourth Amendment in wholly

unrealistic ways. Put another way, to suggest

> that the concept of curtilage has any meaning to people in the context of
> placing their trash for collection is absurd. They put their trash
> containers where they must put them if they wish the collector to take
> them. If there is no sidewalk or curb, the containers are likely to be
> placed on the lawn, close to the street or alley; if there is a strip between
> a sidewalk and the street, they are likely to be placed there; if the street
> immediately abuts a sidewalk, they may well be placed, as respondent
> did, on the lawn at the edge of the sidewalk, to avoid obstructing
> pedestrian traffic on the sidewalk. If there is a common area serving
> several residential units, they will be placed in that area. We have been
> referred to no empirical evidence that people have different privacy
> expectations depending on whether the place they put their trash for
> collection is within or without what, in hindsight, a court later finds to be
> the curtilage. Nor would it be reasonable to give credence to any such
> different expectations. If the trash is placed for collection at a place that
> is readily accessible, and thus exposed, to the public, the person has
> relinquished any reasonable expectation of privacy.

Id.; see also United States v. Long, 176 F.3d 1304, 1308 (10th Cir. 1999) (holding that the

"public accessibility" to the discarded trash, not its location in the curtilage, is the dispositive

inquiry); United States v. Comeaux, 955 F.2d 586, 589 (8th Cir. 1992) (finding the discarded garbage was "readily accessible to the public" even "assuming the garbage cans were within the curtilage"). In short, the "location of trash or garbage within the curtilage of a defendant's home does not automatically establish that the defendant possessed a reasonable expectation of privacy in the garbage; the inquiry must focus not only on the location of the garbage, but also the extent to which it is exposed to the public." 68 Am. Jur. 2d Search & Seizure § 25, at 663-64 (2000).

For these reasons, we hold the trial court likewise erred as a matter of law in concluding that Bryant had a legitimate privacy interest in garbage — left in a trash can placed two to three feet from the street for later pickup — merely because the trash can could be somehow deemed within the outer limits of the curtilage.

### III.

Because none of the legal distinctions drawn between Greenwood and this case hold up under scrutiny, we hold the trial court erred in suppressing the incriminating evidence found among the garbage in Bryant's trash can.[3] We thus vacate the order suppressing the evidence and remand this case for trial.

Reversed & remanded.

---

[3] In his suppression motion, Bryant argued that the search of his trash can also violated the Virginia Constitution. Our Fourth Amendment analysis, however, governs this issue as well. Virginia courts have "consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." Slayton, 41 Va. App. at 109-10 n.2, 582 S.E.2d at 452 n.2; Craddock v. Commonwealth, 40 Va. App. 539, 552 n.2, 580 S.E.2d 454, 461 n.2 (2003).