# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Darren Kinsley Parker

January 14, 2013

Case No. (Criminal) CR12-2835

BY JUDGE MARY JANE HALL

This matter comes before the Court on Defendant's Motion to Suppress evidence recovered from his person as a result of an unlawful seizure. For the reasons stated herein, the Court grants the motion.

### *Factual Background*

This Court heard evidence on this motion at a hearing on November 8, 2012. The evidence adduced indicated that on the night of July 15, 2012, Officer Moore approached two individuals, including the defendant, following a dispatch reporting narcotic activity in progress between two individuals at the location. (Tr. at 6:23-24, 17:22-18:4.) As he approached, Officer Moore shined his flashlight at the individuals "just to see who they were." (Tr. at 7:23-25.) Officer Moore then asked Defendant if he lived at that location; when the defendant said no, Officer Moore asked for Defendant's identification. (Tr. at 8:15-9:2.) Officer Moore then began to run a warrant check from both individuals' identification as two other officers arrived at the scene. (Tr. at 9:3-7.) Officer Moore remained standing near the two individuals while he ran their information for a warrant check. (Tr. at 10:8-18.)

Officer Hathaway, one of the Officers who arrived while Officer Moore was running the identification information, testified that he could smell marijuana on the defendant from "a couple of feet" away. (Tr. at 10:12-15, 20:2-6.) He testified that this odor grew stronger as he got closer to Defendant. (Tr. at 20:2-6.) Officer Hathaway also testified that Defendant

agreed to be patted down. (Tr. at 19:21-25.) In contrast, Shawn Sykes, the other suspect, testified that Officer Hathaway began to search them without first requesting their permission. (Tr. at 51:15-52:3.) During the pat-down, Officer Hathaway testified to feeling "several knots of what felt like leafy substance consistent with packaged marijuana in [Defendant's] right pants pocket." (Tr. at 20:7-13.) He proceeded to search the defendant and recovered multiple bags of marijuana from that pocket. (Tr. at 20:14-17.) At that point, Officer Hathaway placed Defendant under arrest. (Tr. at 20:18-19.) He then recovered several more bags of marijuana from Defendant's left pocket. (Tr. at 20:19-24.) According to Officer Hathaway, Defendant then confessed that the marijuana was his and that he had intended to sell it. (Tr. at 20:25-21:5.)

At the hearing on this motion, Defendant contended that he had been seized upon Officer Moore's arrival, or at the very least, upon Officer Moore's request for and retention of his identification such that any evidence obtained as a result of that seizure must be suppressed. The Commonwealth asserted that Defendant was not seized, or, if he was, that the Officer had reasonable, articulable suspicion to justify this action.

*Analysis*

A request for a suspect's identification does not alone constitute a seizure. *Piggott v. Commonwealth,* 34 Va. App. 45, 49 (2000). The question at issue is, therefore, whether Defendant was seized when Officer Moore retained that identification to run the information.

Generally, a person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980). It is well-established in Virginia that a seizure occurs when an officer requests the identification of a driver who has just been stopped. *See Richmond v. Commonwealth,* 22 Va. App. 257, 261 (1996); *Brown v. Commonwealth,* 17 Va. App. 694, 697 (1994). Moreover, when an officer retains an identification card from a traffic stop and returns to the police car to do a warrant check, a seizure has again occurred, as the driver is not free to leave. *See Hodnett v. Commonwealth,* 32 Va. App. 684, 691-92 (2000). The Commonwealth seeks to distinguish these cases as limited to defendants who were stopped while operating a motor vehicle; if they had left without their identification, they would be driving without a license in violation of Va. Code § 46.2-104. The Commonwealth asserts that Defendant was not seized, as he was under no similar legal obligation to remain until he retrieved his identification.

The Commonwealth's argument contradicts the holding in *Piggott v. Piggott,* 34 Va. App. 45 (2005). In that case, Piggott was a passenger in a car stopped by police for a driving violation. *Id.* at 47. After issuing a verbal warning to the driver, a detective asked Piggott to exit the vehicle

and produce his identification. *Id.* at 48. The detective then retained his identification to run a warrant check, and, after finding that Piggott had outstanding warrants, arrested him. *Id.* At the time that he retained Piggott's identification to run the warrant check, the officer had no objectively reasonable basis for suspecting that he was engaged in criminal activity. *Id.* at 50. Under these circumstances, the Virginia Court of Appeals held:

> [T]he consensual aspect of the encounter ceased when [the detective] retained Piggott's identification while he ran a warrant check. A reasonable person in Piggott's circumstances would not have believed that he could terminate the encounter and walk away. By retaining Piggott's identification, [the detective] implicitly commanded Piggott to stay. Thus, for Fourth Amendment purposes, Piggott was then "seized" by [the detective].

*Id.* at 49 (internal citations omitted). This holding attaches no significance to Piggott's status as a driver or non-driver.

This case cannot be distinguished from *Piggott*, and the totality of the circumstances would have indicated to a reasonable person that he was not free to leave. Defendant was therefore seized when Officer Moore retained the identification card to run a warrant check.

Officer Moore had no reasonable, articulable suspicion that the defendant was committing a crime at the time of the seizure. When asked if he ever observed any narcotics activity by the two suspects, Officer Moore testified "When I walked up, no." (Tr. at 16:16.) Though Officer Hathaway did testify to smelling marijuana on the defendant, Officer Moore did not testify to this observation, nor did he testify to any other factor that would have given him cause beyond the 911 call to suspect Defendant. Thus, at the point Officer Moore seized Defendant, the only information he had that could lead to a reasonable, articulable suspicion is the 911 call which only communicated that there was suspected narcotics activity in progress at that location. This Court has already found that "the 911 call by itself did not give the officer enough cause to detain these two guys with no description of what they were looking for, how old, how tall, what they are wearing, anything like that, just that there are two of them." (Tr. at 46:23-47:4.) As such, Officer Moore lacked a reasonable, articulable suspicion when he seized Defendant by retaining his identification to run a warrant check. Any further basis that arose when Officer Hathaway arrived occurred after the seizure had already taken place.

Because there was no sufficient basis for suspicion at the time of the seizure, the evidence recovered thereafter in response to officer commands must be suppressed.

## *Conclusion*

For these reasons, the Court grants Defendant's Motion to Suppress. Pursuant to Rule 1:13, endorsements by counsel are waived. The Clerk is directed to send copies of this Order to counsel of record. Counsel are directed to submit written objections to this Order within twenty-one days. It is so ordered.