Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and
Agee, JJ., and Carrico, S.J.

RAJAEE EL-AMIN

v.  Record No. 040143     OPINION BY JUSTICE ELIZABETH B. LACY
                                    January 14, 2005
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

A police officer conducted a pat down search of Rajaee
El-Amin because a gun was discovered on the person of El-
Amin's companion.  El-Amin asserts that the officer had no
reason to suspect that El-Amin was armed and dangerous and,
therefore, that the search violated the Fourth Amendment.
Based on the totality of the circumstances, we conclude that
the search was reasonable and did not violate the Fourth
Amendment.

Facts

On the evening of August 4, 2000, the Richmond police
received an anonymous tip that six young black males were at
the corner of Front Street and Fifth Avenue smoking marijuana.
Officers Steven M. Kuzniewski and James H. Baldwin responded
to the dispatcher's call relaying this information.  Although
observing no signs of drug or other criminal activity, the
officers approached four young black males walking one-half
block from the identified corner and asked to speak with them.
Two of the young men walked over to the police officers, while

El-Amin and another of the group (the fourth individual) stayed further back but separate from each other. Moments later, Officers David C. Williams and Mark Zilliox also arrived in response to the call, and Williams immediately observed the fourth individual turn away and shove his hands into his waistband. Officer Williams drew his gun and asked the young man to "stop, turn around, and face [him]." When the fourth individual did not comply, Officer Williams tried to conduct a pat-down search of his person. The young man reached for his waistband, and Officer Baldwin had to secure his left arm so that Officer Williams could continue the pat-down search. Officer Williams felt what he believed to be a gun, yelled "gun," and found a pellet gun in the fourth individual's waistband.

Upon hearing his fellow officer yell "gun," Officer Kuzniewski determined that, because the four individuals were traveling in a "pack," for "safety reasons" he should pat down the other members of the group. He told the other three members of the group to approach and place their hands on the nearest police cruiser for a pat-down search. Although he had no particularized safety concerns as to El-Amin prior to learning that the fourth individual had a gun, Officer Kuzniewski conducted a pat-down search of El-Amin and found a .38-caliber revolver. He arrested El-Amin for illegal

2

possession of a handgun as a juvenile.  After the arrest,

Officer Zilliox searched El-Amin and discovered cocaine and

marijuana in his pockets.  El-Amin was subsequently charged

with violations of Code § 18.2-248, possession of cocaine with

the intent to distribute, and Code § 18.2-308.4, possession of

a firearm while in possession of a controlled substance.

Proceedings

Prior to his trial, El-Amin filed a motion to suppress

the evidence claiming a violation of his rights under the

Fourth, Fifth, Sixth, and Fourteenth Amendments to the

Constitution of the United States.  The trial court denied the

motion.  El-Amin was convicted of the charges and sentenced to

a total of ten years imprisonment, with five years suspended.[1]

On appeal, a panel of the Court of Appeals reversed the

convictions holding that the trial court's denial of El-Amin's

motion to suppress was error.[2]  The Court of Appeals granted

the Commonwealth's motion for a rehearing en banc and vacated

the panel's opinion and order.  The rehearing resulted in an

evenly divided vote which thereby affirmed the trial court's

---

[1] The Conviction and Sentencing Order dated April 4, 2001
lists convictions of possession of a firearm while in
possession of cocaine and possession of cocaine with intent to
distribute, but the Court of Appeals noted this was a clerical
error because the trial judge reduced the intent to distribute
charge to mere possession, a violation of Code § 18.2-250.

judgment. El-Amin filed a timely appeal to this Court asserting that the evidence obtained by the police from the pat-down search of his person was obtained in violation of his Fourth Amendment rights and Article 1, Section 10 of the Constitution of Virginia.[3]

In the courts below, El-Amin argued that his Fourth Amendment rights were violated initially when approached by Officers Kuzniewski and Baldwin because the information provided by the unidentified informant was insufficient to justify a stop of the four young men. See Florida v. J.L., 529 U.S. 266 (2000). At oral argument in this Court, El-Amin abandoned that position and no longer contests the proposition that his initial encounter with the police officers was consensual.

El-Amin maintains, however, that he was unconstitutionally seized and searched at the time Officer Kuzniewski directed him to lean on the police car and conducted a pat-down search. El-Amin contends that under

_____

[2] The Court of Appeals dismissed El-Amin's original appeal because the transcripts were not timely filed, but later granted El-Amin a delayed appeal.

[3] The rights El-Amin asserts under the Fourth Amendment are co-extensive with those rights afforded under Article 1, Section 10 of the Constitution of Virginia. Lowe v. Commonwealth, 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985). For purposes of this opinion we include El-Amin's state constitutional rights in our discussion of his federal constitutional rights.

<u>Terry v. Ohio</u>, 392 U.S. 1 (1968), this search and seizure required, at a minimum, that Officer Kuzniewski have a reasonable articulable suspicion that El-Amin was engaged in criminal activity and that he was a danger to the officer. El-Amin contends that no such particularized suspicion existed here, and, therefore, the search and seizure, based solely on El-Amin's association or physical proximity to the other three youths, was unconstitutional.

Discussion

The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not be
> violated, and no warrants shall issue, but upon
> probable cause . . . and particularly describing the
> place to be searched, and the persons or things to
> be seized.

U.S. Const. amend. IV. "The basic purpose of this Amendment, as recognized in countless decisions of [the United States Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." <u>Camara v. Municipal Court</u>, 387 U.S. 523, 528 (1967). The standard for a constitutional search or seizure is reasonableness. <u>Elkins v. United States</u>, 364 U.S. 206, 221 (1960). The United States Supreme Court has identified

5

various circumstances in which a search and seizure complies with the reasonableness requirement.

The Court has held that searches and seizures conducted pursuant to a particularized warrant based on probable cause as adjudged by a magistrate are reasonable. See Massachusetts v. Sheppard, 468 U.S. 981, 987-91 (1984); McDonald v. United States, 335 U.S. 451, 455 (1948). Recognizing that law enforcement will not always be in a position to secure a warrant prior to detaining or searching persons suspected of criminal activity, the Court has held that searches and seizures based on probable cause that the individual is engaged in criminal activity are reasonable for purposes of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 819 (1996); United States v. Watson, 423 U.S. 411, 423-24 (1976). The Court has also concluded that a more limited stop and search of a person, where based on a reasonable articulable suspicion that he or she is, has, or is about to engage in criminal activity and may be armed and dangerous, is reasonable under the Fourth Amendment. Adams v. Williams, 407 U.S. 143, 146 (1972); Terry, 392 U.S. at 24. Furthermore, the Court has held that the limited detention involved in requiring a driver or passengers to step out of a vehicle stopped for a traffic violation is reasonable for purposes of

the Fourth Amendment.  <u>Maryland v. Wilson</u>, 519 U.S. 408, 414-15 (1997); <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 109-11 (1977).

In reaching the conclusion that these searches and seizures did not violate the Fourth Amendment, the Supreme Court has employed a balancing test, weighing the "personal security" interests of the individual against the public purpose served by the search or seizure.  <u>Wilson</u>, 519 U.S. at 411; <u>Mimms</u>, 434 U.S. at 109; <u>Terry</u>, 392 U.S. at 19-21.  In doing so, the Court identified law enforcement's responsibility for criminal investigation and the need to provide for the safety of the officers involved in such investigations as a public purpose.  <u>Wilson</u>, 519 U.S. at 413; <u>Mimms</u>, 434 U.S. at 110-11; <u>Terry</u>, 392 U.S. at 22-24. Balancing these public purposes and the individual's interest in personal privacy, the Court concluded that the intrusions were reasonable.  <u>Wilson</u>, 519 U.S. at 414-15; <u>Mimms</u>, 434 U.S. at 111; <u>Terry</u>, 392 U.S. at 31.

The Commonwealth suggests that in this case, Officer Kuzniewski's legitimate concern for his safety and that of the other police officers was sufficient to justify the pat down search at issue and under these circumstances there is no need for the requirement of particularized suspicion initially addressed in <u>Terry</u>.  <u>See</u> <u>also</u> <u>Maryland v. Buie</u> , 494 U.S. 325, 334 (1990) ("<u>Terry</u> requires reasonable individualized

7

suspicion before a frisk for weapons can be conducted.");

Ybarra v. Illinois, 444 U.S. 85, 94 (1979) ("The 'narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked.")  In support of its position, the Commonwealth points to a handful of cases from the federal courts of appeal that the Commonwealth suggests have adopted a "companion rule."  United States v. Simmons, 567 F.2d 314 (7th Cir. 1977); United States v. Poms, 484 F.2d 919 (4th Cir. 1973) (per curiam); United States v. Berryhill, 445 F.2d 1189 (9th Cir. 1971).  That "rule" approves the search of the companion of a person validly detained based solely on the status of companion.  We decline to adopt such a per se rule.[4]

The United States Supreme Court has not considered the validity of a pat down search under circumstances such as

---

[4] Furthermore, we disagree that these cases establish a per se "companion rule" because the searches in each case were sustained on grounds other than simple companionship. Simmons, 567 F.2d at 320 (valid search of the area within reach of a companion present during the arrest of a suspect for a violent crime occurring the same night); Poms, 484 F.2d at 921-22 (the search of a known associate of an arrestee valid when the police knew the associate was likely armed and the associate arrived at the arrestee's home during the execution of a search warrant); Berryhill, 445 F.2d at 1193 (search of an arrestee's wife's purse valid when police executed an arrest warrant for arrestee and found his wife in the same car because arrestee could not raise wife's personal Fourth Amendment rights and the purse was a "temporary depository" of arrestee's property).

8

those presented in this case.[5]  Nevertheless, prior cases of that Court are instructive.  In Terry, the Supreme Court was faced with a factual situation that involved "an entire rubric of police conduct – necessarily swift action predicated upon the on-the-spot observations of the officer on the beat."  392 U.S. at 20.  The Court recognized the need for police officers in such situations to be able to protect themselves and to avoid unnecessary risks when they suspect an individual may be armed and dangerous.  Under such circumstances, the Court in Terry determined that a pat down search did not require that an officer be "absolutely certain" that an individual was armed prior to search.  "[T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others is in danger." 392 U.S. at 27.

Applying these concepts to the case at bar, we conclude that Officer Kuzniewski was warranted in his belief that his

---

[5] In Ybarra v. Illinois, the Supreme Court held that the police improperly searched a patron at a bar while executing a search warrant for the bartender and the premises, stating that "a person's mere propinquity to others suspected of criminal activity, does not, without more, give rise to probable cause to search that person."  444 U.S. at 96. Ybarra is not dispositive here because in Ybarra the officers did not consider the patron and bartender as part of a group, the officers had no reason to believe that they were subject to any particular danger from any of the patrons in the bar, and simply told all patrons that they were conducting a " 'cursory search for weapons.' "  Id. at 341.

9

safety and the safety of others was in danger from El-Amin. The encounter took place in the evening in a high crime area. Officer Kuzniewski believed that the four individuals were a group.[6]  Although El-Amin and the fourth individual did not engage in conversation with the officers during the initial consensual encounter, they remained within six feet of the officers and did not attempt to withdraw from the area of the encounter, further supporting the officers' perception that the four individuals were a group.

Officer Kuzniewski testified that prior to learning that the fourth member of the group had a gun, El-Amin's actions did not give rise to any safety concerns.  However, on the totality of facts presented here, upon learning that the fourth individual had a hand gun, Officer Kuzniewski was warranted in inferring that the inherent tendency toward violence demonstrated by one group member carrying a gun raised reasonable and particularized safety concerns as to other members of the same group.  The circumstances in this case support the officer's objectively reasonable apprehension that, upon discovery of a weapon on the person of one member of the group, the other members of the group might also be armed and dangerous.

_____

[6] Although El-Amin disputes the characterization of the four individuals as a group, the trial court found, as a

In reaching this conclusion, we are careful to dispel any implication that El-Amin's companionship status alone was sufficient to authorize a pat down search or that an officer's generalized concern for his safety alone would validate such a search under the Fourth Amendment. The totality of the facts in this case - place, time, discovery of a weapon, and group activity - validates the pat down search under the principles utilized by the Supreme Court when considering Fourth Amendment challenges to searches and seizures.

For the reasons stated, the pat down search of El-Amin following discovery of a weapon on his companion did not violate El-Amin's Fourth Amendment rights. Therefore, the trial court did not err in refusing to suppress the evidence found as a result of the pat-down search, and we will affirm his convictions.

<u>Affirmed</u>.

matter of fact, that they were a group.