COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Beales
Argued at Chesapeake, Virginia


MATTHEW SNELL
                                                MEMORANDUM OPINION* BY
v.       Record No. 2840-05-1                   JUDGE D. ARTHUR KELSEY
                                                     FEBRUARY 13, 2007
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                          Marc Jacobson, Judge Designate

              Stacie A. Cass, Assistant Appellate Defender (Catherine E.P.
              Haas, Assistant Appellate Defender; Virginia Indigent
              Defense Commission, on briefs), for appellant.

              Craig Stallard, Assistant Attorney General (Robert F.
              McDonnell, Attorney General; Denise C. Anderson,
              Assistant Attorney General, on brief), for appellee.


       Matthew Snell appeals his conviction for possession of cocaine claiming the trial court

erred in denying his motion to suppress.  We disagree and affirm Snell's conviction.

                                              I.

       "On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."

Kyer v. Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (en banc) (citation

omitted).

       Patrolling just before 5:00 a.m. one morning, two police officers saw a youth riding a

bicycle in a commercial area of Portsmouth.  The youth matched "to a T" a recently reported

description of a runaway juvenile.  When the officers turned their vehicle in the direction of the

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

youth, he made several abrupt and evasive turns to distance himself from the officers. While trying to peddle away from the officers, the youth reached into his pocket and dropped something out of it.

The officers caught up with the youth and asked him for his name and age. Snell said he was eighteen. Because he looked younger, the officers asked him if he had any identification with him. The officers also patted down the outside of Snell's clothes for any potential weapons.[1] Snell then handed his wallet to one of the officers.

Opening the wallet in search of identification, one of the officers saw that the billfold was wedged open by a "very tightly" packed, four-fold dollar bill worked into a "fairly thick" square. Both officers had been trained to recognize common forms of drug packaging and had encountered this particular type of packaging in earlier drug arrests. The officers knew the four-fold square serves as a container which, when unfolded, makes its contents "readily available" for use. Both officers concluded that "narcotics might be packaged up in that bill." They unfolded the bill, found crack cocaine, and arrested Snell.

At trial, Snell presented no evidence. Instead, he moved to suppress the cocaine on two grounds. First, he argued the officers lacked any reasonable suspicion that Snell was involved in criminal activity. "I don't believe the report of a missing juvenile is enough," counsel argued, "I don't think that's any criminal activity." Second, Snell claimed the officers lacked probable cause to unfold the folded dollar bill. The trial court denied the motion and convicted Snell of possession of cocaine in violation of Code § 18.2-250.

---

[1] Snell does not challenge the legality of the weapons pat down. We thus do not decide whether the officers had reason to believe their safety was in jeopardy. See generally El-Amin v. Commonwealth, 269 Va. 15, 22, 607 S.E.2d 115, 118 (2005) (summarizing principles authorizing weapons frisk when officers "suspect an individual may be armed and dangerous").

II.

Though the ultimate question whether the officers violated the Fourth Amendment receives *de novo* scrutiny, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449-50 (2003) (citation omitted). To prevail on appeal, "the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error." Id. at 105, 582 S.E.2d at 450 (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)).

### A.  PROBABLE CAUSE TO DETAIN SNELL

Upon a showing of probable cause, Virginia law authorizes the detention of juveniles who have "run away from home." Code § 16.1-246(G). Snell fit the physical description of a runaway "to a T" and conspicuously attempted to evade the police. This information provided the officers with probable cause to detain Snell in an effort to determine his identity.[2] Probable cause did not expire when Snell told the officers he was eighteen. The officers were under no obligation to take Snell's word for it — particularly since Snell looked younger than eighteen and had already tried, albeit unsuccessfully, to avoid capture. Thus, the officers acted within their constitutional authority by stopping Snell and asking him for his identification.[3]

---

[2] All the more, the officers had a reasonable suspicion sufficient to authorize a brief investigatory stop of Snell. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Adams v. Williams, 407 U.S. 143, 146 (1972) (citation omitted). This standard is "obviously less demanding than that for probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989).

[3] Because the officers had probable cause to believe Snell was the runaway previously reported, we need not address the trial court's additional finding that the officers possessed a

- 3 -

## B.  PROBABLE CAUSE TO UNFOLD THE DOLLAR BILL

The trial court found that Snell "voluntarily turned over his wallet" to the officers.  Snell does not contest this finding on appeal.  He instead argues that unfolding the tightly folded dollar bill went beyond any consensual search for identifying information and, thus, required an independent legal basis.  Assuming *arguendo* the officers needed an independent legal basis, we hold they had one.[4]

At the time the officers unfolded the dollar bill, several circumstances raised a substantial likelihood it contained narcotics.  To begin with, the dollar bill was not taken off of a customer standing in a grocery queue, but from a runaway suspect (biking in a commercial area just before the crack of dawn) who had just tried unsuccessfully to evade the police.  By itself, flight is an incriminating circumstance.  See Whitfield, 265 Va. at 362, 576 S.E.2d at 465.[5]  It became even more so when the officers saw Snell throwing something out of his pocket while on the run.  See Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).[6]

---

reasonable, articulable suspicion that Snell was a juvenile in violation of the municipal curfew ordinance.  See Portsmouth City Code § 24-3 (2006).

[4] Given our holding, we need not decide whether Snell's act of volunteering his wallet implied consent to search everything within it.  See Hairston v. Commonwealth, 216 Va. 387, 387-89, 219 S.E.2d 668, 669 (1975) (*per curiam*) (affirming trial court's finding that voluntarily producing a purse to police "was an unequivocal display of a free and voluntary consent to search the contents, including the wallet in which the incriminating drugs were found").

[5] See also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); McCain v. Commonwealth, 261 Va. 483, 492-94, 545 S.E.2d 541, 546-47 (2001) (finding that flight supported probable cause and finding of guilt); Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996) ("Flight following the commission of a crime is evidence of guilt . . . ."); Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833-34 (1990) (*en banc*) (confirming flight may be considered as evidence of guilt).

[6] See also Lawson v. Commonwealth, 217 Va. 354, 357, 228 S.E.2d 685, 687 (1976) (finding probable cause based in part on defendant's furtive "act of throwing" a yellow envelope to the floor); Mavin v. Commonwealth, 31 Va. App. 161, 164, 521 S.E.2d 784, 786 (1999)

Nor can we expect the officers to ignore the peculiar nature of Snell's dollar bill. Unlike any ordinary dollar bill, immediately usable for legal tender, this bill was a tightly folded container. It had been manipulated four ways into a "fairly thick" square awkward enough to wedge open the billfold. The officers had been trained to recognize this as a characteristic method of packaging narcotics, and their personal experience with drug arrests had confirmed it as such. Like the trial court, we see no reason to doubt this assertion. See Grandison v. Commonwealth, 48 Va. App. 314, 323, 630 S.E.2d 358, 362 (2006) (holding that the "systematic" folding of dollar bill into a container is a circumstance trained police officers may recognize as "a common method for concealing and carrying contraband").[7]

In theory, of course, someone might manipulate a dollar bill in this manner simply for the origami fun of it or for wholly innocuous utilitarian purposes (like packaging vitamins or rock candy). But it is difficult to hypothesize any common practice for doing so. See Grandison, 48 Va. App. at 322-23, 630 S.E.2d at 362 (distinguishing a dollar bill "legitimately used by law-abiding citizens on a daily basis" from one conspicuously "manipulated in a manner consistent with illegitimate usage"). This reason alone distinguishes this case from situations where a suspect puts his drugs in a film canister, see, e.g., Harris v. Commonwealth, 241 Va. 146, 154,

---

(probable cause in part because suspect "dropped the bottle to the floor and pushed it with his foot underneath the seat").

[7] This folding technique has been described by many names. It is often referred to as a "bindle (a folded dollar bill containing a small amount of cocaine)." United States v. Soto, 375 F.3d 1219, 1221 (10th Cir. 2004); see, e.g., State v. Courcy, 739 P.2d 98, 99 (Wash. Ct. App. 1987). We have called it an "apothecary fold." Grandison, 48 Va. App. at 317, 630 S.E.2d at 359. Other jurisdictions have called it a "pharmacy fold." See, e.g., United States v. Freisinger, 937 F.2d 383, 385 (8th Cir. 1991); State v. Bishop, 387 N.W.2d 554, 559 (Iowa 1986); State v. Anthony, 749 P.2d 37, 39 (Kan. 1988); Leonard v. State, 486 A.2d 163, 164 (Md. 1985); State v. Hernandez, 493 N.W.2d 181, 188 (Neb. 1992); State v. Maxfield, 427 A.2d 12, 13 (N.H. 1981). The officers testifying in Snell's case did not use these technical descriptions but did explain the folding technique as one commonly used to package drugs. Like the trial court, we find this functional description sufficient to explain what the officers meant.

- 5 -

400 S.E.2d 191, 196 (1991), as it is common practice to put film in film canisters. Much the same can be said for hand-rolled cigarettes, see, e.g., Brown v. Commonwealth, 270 Va. 414, 420-21, 620 S.E.2d 760, 763-64 (2005), because, for some, it is a common practice to put tobacco in hand-rolled cigarettes. Such situations are far different from cases where, as here, an item "legitimately used by law-abiding citizens on a daily basis" has been conspicuously "manipulated in a manner that was consistent with illegitimate usage," Grandison, 48 Va. App. at 323, 630 S.E.2d at 362, the kind of circumstances uniquely "understood by those versed in the field of law enforcement," Slayton, 41 Va. App. at 106, 582 S.E.2d at 450 (citation omitted).

Snell finds fault with this reasoning, arguing that the incriminating circumstances in this case proved nothing with certitude. We concede the point. The probable cause test, however, is not calibrated to "deal with hard certainties, but with probabilities." Id. (citation omitted). Nor does it "demand any showing that such a belief be correct or more likely true than false." Id. (quoting Texas v. Brown, 460 U.S. 730, 741 (1983) (plurality op.)).[8] "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Not even a "*prima facie* showing" of criminality is required. Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation omitted).[9] Instead, probable cause "requires only a *probability* or *substantial chance* of criminal activity, not an actual showing of such activity." Id. at 243 n.13 (emphasis added). Police officers, therefore, need not be "possessed of near certainty as to the seizable nature of the items." Brown, 460 U.S. at 741.

---

[8] See also United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004); United States v. Jones, 31 F.3d 1304, 1313 (4th Cir. 1994).

[9] See also Saunders v. Commonwealth, 218 Va. 294, 300-01, 237 S.E.2d 150, 155 (1977); Westcott v. Commonwealth, 216 Va. 123, 126, 216 S.E.2d 60, 63 (1975); Manley v.

The circumstances of this case — Snell's flight from police, his act of discarding something from his pocket while on the run, and his manipulation of a dollar bill into a four-fold square container in a manner characteristic of illegal drug packaging — provided the officers with probable cause to unfold the folded dollar bill and seize the cocaine found within. See Grandison, 48 Va. App. at 323, 630 S.E.2d at 362.

III.

Because the trial court did not err in denying Snell's motion to suppress, we affirm Snell's conviction for possession of cocaine in violation of Code § 18.2-250.

Affirmed.

---

Commonwealth, 211 Va. 146, 151, 176 S.E.2d 309, 313 (1970); Quigley v. Commonwealth, 14 Va. App. 28, 34, 414 S.E.2d 851, 855 (1992).