COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Beales and Senior Judge Willis
Argued at Salem, Virginia


KEITH LAMONTE HILL

v.     Record No. 1828-11-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
OCTOBER 9, 2012


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
William N. Alexander, II, Judge

David A. Furrow (Allen (A.J.) Dudley, Jr.; Melissa P. Keen;
Furrow & Dudley, P.C., on briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.


Keith Lamonte Hill (appellant) appeals from his convictions for two counts of grand

larceny, entered upon his conditional pleas of guilty.[1]  On appeal, he argues the trial court

erroneously denied his motion to suppress evidence obtained using a global positioning system

device (GPS) placed on his car.  He contends that placement and use of the GPS without a

warrant or exigent circumstances violated Code § 18.2-146, which prohibits tampering with a

motor vehicle, and infringed his reasonable expectation of privacy, both of which rendered the

actions of police an illegal seizure and search in violation of the United States and Virginia

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although appellant was charged for numerous grocery and convenience store larcenies
committed in various counties, the two convictions at issue in this appeal were for acts
committed in Franklin County.

Constitutions.[2]  We assume without deciding, based on United States v. Jones, ___ U.S. ___, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012), that the placement and use of the GPS without a warrant constituted an unreasonable search or seizure.  Nevertheless, we conclude evidence obtained from independent sources provided probable cause for appellant's arrest and the accompanying search of his vehicle for a crime committed only hours earlier.  Thus, we hold the trial court did not err in refusing to suppress the challenged evidence, and we affirm appellant's convictions.

I.

On appeal of a ruling denying a motion to suppress, an appellant "has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of the suppression motion constituted reversible error."  McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515 (2008).  Our examination of this issue "presents a mixed question of law and fact that we review *de novo* on appeal.  In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."  Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (citations omitted).  The determination of whether a Fourth Amendment violation has occurred is based on "'an objective assessment of the officer's actions' . . . and not on the officer's actual state of mind at the time the challenged action was taken."  Maryland v. Macon, 472 U.S. 463, 470-71, 105 S. Ct. 2778, 2783, 86 L. Ed. 2d 370, 378 (1985) (quoting Scott v. United States, 436 U.S. 128, 136, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168, 177 (1978)).

_____

[2] Our case law establishes that the rights appellant asserts under the Fourth Amendment are co-extensive with those rights afforded under Article 1, Section 10, of the Constitution of Virginia.  El-Amin v. Commonwealth, 269 Va. 15, 19 n.3, 607 S.E.2d 115, 116 n.3 (2005); Lowe v. Commonwealth, 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985).  For purposes of this opinion, therefore, we include appellant's state constitutional rights in our discussion of his federal constitutional rights.

## A. WARRANTLESS USE OF THE GPS

In Jones—decided well after a GPS device was used to track the movements of appellant in this case and well after he was arrested, partially as a result of what the GPS revealed—the United States Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search' [under the Fourth Amendment]." ___ U.S. at ___, 132 S. Ct. at 949, 181 L. Ed. 2d at 918. Based upon the holding in Jones, we assume without deciding, for purposes of this decision only, that placement of the GPS on appellant's car constituted a warrantless search.

## B. THE EXCLUSIONARY RULE

The Fourth Amendment protects against unreasonable searches and seizures but "is silent about how this right is to be enforced. To supplement the bare text, [the United States Supreme Court] created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation."[3] Davis v. United States, ___ U.S. ___, ___, 131 S. Ct. 2419, 2423, 180 L. Ed. 2d 285, 290 (2011).

---

[3] Appellant also contends the evidence should be excluded because Botetourt County's Investigator Dillo violated Code § 19.2-249 by attaching the GPS to appellant's car while it was parked in Bedford, outside Dillo's jurisdiction. That code section provides that a criminal offense committed on the boundary of two jurisdictions, or within 300 yards thereof, may be prosecuted and punished in either jurisdiction and that any law enforcement officer of a particular jurisdiction "shall have jurisdiction to make arrests and preserve the peace for a like distance on either side of the boundary line between such [jurisdictions]." As a result of Dillo's violating Code § 19.2-249, contends appellant, Dillo's actions also constituted a violation of Code § 18.2-146, a criminal statute which prohibits tampering with a vehicle.

Assuming without deciding Investigator Dillo's actions violated Code §§ 18.2-146 and 19.2-249, that violation does not entitle appellant to suppression of the evidence obtained therefrom. The remedy for violation of a statute is not exclusion unless such a remedy is specifically so provided. See Janis v. Commonwealth, 22 Va. App. 646, 651, 472 S.E.2d 649, 652 (1996), cited with approval in Virginia v. Moore, 553 U.S. 164, 174, 128 S. Ct. 1598, 1606, 170 L. Ed. 2d 559, 569 (2008). No such provision exists here.

Code § 19.2-56.2, which took effect on April 6, 2012, and provides a process by which law enforcement may apply for a warrant to use a GPS, is not applicable to this case.

Under current Fourth Amendment law, "[e]xclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." Id. at ___, 131 S. Ct. at 2426, 180 L. Ed. 2d at 293 (quoting Stone v. Powell, 428 U.S. 465, 486, 96 S. Ct. 3037, 3048, 49 L. Ed. 2d 1067, 1083 (1976)). "The rule's sole purpose . . . is to deter future Fourth Amendment violations. . . . Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" Id. at ___, 131 S. Ct. at 2426-27, 180 L. Ed. 2d at 294 (quoting United States v. Janis, 428 U.S. 433, 454, 96 S. Ct. 3021, 3032, 49 L. Ed. 2d 1046, 1060 (1976)).

Appellant contends that because the officers did not obtain a warrant before attaching the GPS to his vehicle and admitted that information from the GPS was "instrumental" in their decision to obtain search warrants and stop and search appellant's vehicle, all fruits of that stop and search, including appellant's statements, were obtained in violation of the Fourth Amendment and must be excluded. The Commonwealth posits two theories to support affirming the trial court's ruling denying appellant's motion to suppress, the independent source doctrine and the good faith exception to the exclusionary rule. We agree with the Commonwealth that the independent source doctrine supports the trial court's denial of appellant's motion to suppress,[4] and, therefore, we do not consider the applicability of the good faith exception.

In determining whether evidence is derivative of an illegal act and, therefore, subject to exclusion under the Fourth Amendment as "fruit of the poisonous tree," the question is

---

[4] The fact that the trial court did not rule based on this theory is not dispositive. "We do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground." Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963), quoted with approval in Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010). "[T]he proper focus of the right result for the wrong reason doctrine" is "[c]onsideration of the facts in the record and whether additional factual presentation is necessary to resolve the [alternative ground]." Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010).

"'whether[,] granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441, 455 (1963) (quoting John M. Maguire, Evidence of Guilt 221 (1959)), quoted with approval in Hudson v. Michigan, 547 U.S. 586, 592, 126 S. Ct. 2159, 2164, 165 L. Ed. 2d 56, 65 (2006). Evidence is not "'fruit of the poisonous tree' simply because it would not have come to light *but for* the illegal actions of the police." Wong Sun, 371 U.S. at 487-88, 83 S. Ct. at 417, 9 L. Ed. 2d at 455 (emphasis added); see Hudson, 547 U.S. at 592, 126 S. Ct. at 2164, 165 L. Ed. 2d at 64-65 (observing "but-for causality is only a necessary, not a sufficient, condition for suppression"). The exclusion of evidence "'has always been our last resort, not our first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." Herring v. United States, 555 U.S. 135, 140, 129 S. Ct. 695, 700, 172 L. Ed. 2d 496, 504 (2009) (quoting Hudson, 547 U.S. at 591, 126 S. Ct. at 2163, 165 L. Ed. 2d at 64). Evidence is obtained by means sufficiently distinguishable to be admissible despite an illegality by the authorities if it is "evidence attributed to an independent source" or "evidence where the connection has become so attenuated as to dissipate the taint." Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974).

Here, the officers obtained from an independent source, free from any taint, evidence sufficient to provide probable cause to arrest appellant and search his vehicle on September 27, 2010. Probable cause

> relates to probabilities that are based upon the factual and practical
> considerations in everyday life as perceived by reasonable and
> prudent persons . . . . [P]robable cause exists when the facts and
> circumstances within the officer's knowledge, and of which he has
> reasonably trustworthy information, alone are sufficient to warrant
> a person of reasonable caution to believe that an offense has been
> or is being committed.

Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). "'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction.'" Slayton v. Commonwealth, 41 Va. App. 101, 107, 582 S.E.2d 448, 451 (2003) (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879, 1890 (1949)). Thus, evidence sufficient to provide probable cause to arrest for a crime need not be evidence sufficient to convict for that offense. Id. In assessing probable cause, a court may consider the collective knowledge of law enforcement officers acting together and sharing information. Commonwealth v. Smith, 281 Va. 582, 591-92, 709 S.E.2d 139, 143 (2011).

Where police have probable cause to arrest an occupant of a vehicle, officers may search the vehicle at the scene pursuant to that arrest if, *inter alia*, it is "'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Arizona v. Gant, 556 U.S. 332, 343, 129 S. Ct. 1710, 1719, 173 L. Ed. 2d 485, 496 (2009) (quoting Thornton v. United States, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137, 158 L. Ed. 2d 905, 920 (2004) (Scalia, J., concurring in the judgment)).

Here, the officers had probable cause to arrest appellant on September 27, 2010, independent of the evidence obtained from the GPS. See, e.g., Virginia v. Moore, 553 U.S. 164, 173-74, 128 S. Ct. 1598, 1605-06, 170 L. Ed. 2d 559, 568-69 (2008) (recognizing constitutional validity of warrantless arrest supported by probable cause); cf. Code § 19.2-81(B) (providing a law enforcement officer "may arrest without a warrant any person who commits any crime in the presence of the officer and any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence"). The officers' focus on appellant as a suspect "did not begin with the placement of the GPS device on his [vehicle]" on September 14, 2010. See Foltz v. Commonwealth, 58 Va. App. 107, 118, 706 S.E.2d 914, 919-20 (2011) (en

banc), aff'd on other grounds, ___ Va. ___, ___ S.E.2d ___ (2012). It began, instead, around September 10, 2010, when Botetourt County Deputy John Bruce told Lieutenant John Mandeville he had stopped a suspicious vehicle in the Greenway Market parking lot in the early morning hours of September 4, 2010, long after the store had closed. These events occurred only hours before store employees reported a suspicious man inside the store who falsely claimed to be from the store's security provider. The man could be seen in the September 4 surveillance video as he applied masking tape to cover the store's security system motion sensors, but he left before store employees could contact police.

At that time, Lieutenant Mandeville was already consulting with law enforcement officers from several neighboring jurisdictions about a series of break-ins with a particular *modus operandi*. That *modus operandi* involved a breach of each store's back wall and the theft of only large quantities of cigarettes. In a fashion that the evidence established was unusual for break-ins, the perpetrator of these burglaries made no attempt to steal cash. Four such burglaries had occurred in nearby Campbell County in May and June of 2010; two more, the crimes involved in this appeal, had occurred in Franklin County in July and August of 2010.

In addition to the suspicious incident inside Botetourt County's Greenway Market on September 4, 2010, Lieutenant Mandeville and Investigator David Dillo were also investigating the attempted break-in of the Botetourt County Minute Market which had occurred on August 8, 2010. After Minute Market employees heard about the suspicious events at the Greenway Market, they remembered a similar suspicious event at their store and reviewed their surveillance videotape, as well. The Minute Market's video surveillance from August 1, 2010, showed a man Mandeville and Dillo believed was the same suspicious man who appeared in the Greenway Market video. The man "appeared to be casing [the Minute Market]" and was seen "messing

around" by the back wall of the store near the part of the wall where the attempted break-in occurred a week later.

Although Mandeville and Dillo did not at first know the identity of the suspicious man, Mandeville believed he had discovered the man's identity when Deputy Bruce informed him about the suspicious vehicle he had stopped in the Greenway Market parking lot in the early morning hours of September 4, 2010. Deputy Bruce had obtained identification from the two men in the vehicle; the driver and owner of the vehicle was appellant. When Lieutenant Mandeville obtained appellant's photograph from the Department of Motor Vehicles, Mandeville and Dillo believed that photo depicted the same man they had seen engaging in suspicious behavior in the surveillance videos from Botetourt County's Minute and Greenway Markets. At the suppression hearing, the Commonwealth introduced appellant's DMV photo and still shots from the two Botetourt County surveillance videos, and the trial court found "it certainly looks like [appellant]." Evidence also established that video footage from the July 2010 break-in in Franklin County depicted a man of the same race and "same description as [appellant]." Further, the evidence established the perpetrator's *modus operandi* was evolving, as he was visible in surveillance video in the earlier break-ins, but in the later break-ins, appellant attempted to prevent video surveillance by disabling the various stores' motion detectors using tape.

On or before September 21, 2010, Mandeville met with Campbell County Investigator Tracy Emerson to review one of the Botetourt County surveillance videos, and Emerson thought the same person, appellant, was the perpetrator in video surveillance of one of the similar crimes committed in his jurisdiction in May 2010. Although investigators had previously been unable to link appellant to the make and model of any of the vehicles seen in the break-ins or suspicious incidents other than the after-hours stop in the Greenway Market parking lot, Investigator Emerson then determined that appellant had rented cars from a car rental company on several

occasions. Investigator Emerson determined further that the man he believed was appellant in surveillance video from a May 17, 2010 break-in in his jurisdiction was seen in both the video from that date and video from one week prior driving a silver or gray Chevrolet HHR, and the car rental records Emerson obtained showed appellant had rented an HHR of that color on several occasions during previous months.

Finally, on the morning of September 27, 2010, police learned a Campbell County Food Lion had been broken into the night before. The break-in had occurred through the store's back wall, and a large quantity of cigarettes had been stolen. Within hours of the discovery of the break-in, Lieutenant Mandeville observed that the back seat of appellant's car, which was parked in plain view at his home, contained "a large amount of items covered up with some type of bedding."[5] Although police also obtained information from the GPS prior to obtaining search warrants for appellant's car and home, they had probable cause without the GPS information to arrest appellant while he was traveling in his car and to search the car, which still contained "a large amount of items covered with some type of bedding," for evidence incident to that arrest.

II.

For these reasons, we conclude evidence obtained from independent sources provided probable cause for appellant's arrest for a crime committed only hours earlier and for the accompanying search of his vehicle. Thus, we hold the trial court did not err in refusing to suppress the challenged evidence flowing from that arrest and search, and we affirm appellant's convictions.

Affirmed.

---

[5] The evidence indicates Lieutenant Mandeville "drove by" appellant's house and that, without "get[ting] out of the car," he "could see over the back seat" of appellant's vehicle. No evidence in the record indicates Lieutenant Mandeville committed a trespass on appellant's property in order to make this observation, and appellant does not argue that a trespass occurred.